No. 22,474.

PAGE ATKINSON and EMERSON ATKINSON, *Appellees,* v. J. A. DARLING, *Appellant.*

### SYLLABUS BY THE COURT.

1. WRITTEN LEASE—*Mutual Mistake Alleged—Reformation Asked.* An instrument in writing which admittedly did not correctly recite all the terms of the contract of the parties may be reformed for mutual mistake, and such mutual mistake may be satisfactorily established by competent, preponderating evidence, although one of the parties who resisted its reformation testified that there had been no mutual mistake and that he understood the contract to be as it was set down in the written instrument.

2. SAME—*New Trial Granted—No Reversible Error.* Ordinarily no reversible error can be based upon the granting of a new trial unless the trial court indicates the exclusive and specific ground upon which the new trial is granted, and unless that ground happens to be one which the supreme court is in as good a position to consider and determine as the trial court.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed July 10, 1920. Affirmed.

*J. O. Wilson,* and *J. H. Wilson,* both of Salina, for the appellant.

*Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was a suit to reform a written lease and to enjoin the tenant from entering upon some lands which by mistake had been included in the lease.

The plaintiffs held a public auction at which they offered one hundred acres of land for sale, and as an inducement to

its sale they offered to give the purchaser a lease for five years on some adjacent arable land and on sixty acres of pasture land. The plaintiff's pasture contained about one hundred acres, but they intended to reserve forty acres of the pasture for the purpose of breaking it and putting it into crops themselves. The defendant was the successful bidder for the land offered for sale. When the lease was prepared, no reservation of the forty acres of the pasture land which plaintiffs intended to break and farm themselves was inserted in the lease. During the first year covered by the lease, however, the plaintiffs did retain possession of the forty acres, and did break it and farm it. Next year, the tenant attempted to commence farming operations. Plaintiffs objected, and he advised them to read the lease. They did, and this lawsuit followed. The defendant's answer denied the pertinent matters pleaded by plaintiffs; and alleged that the forty acres was only withheld from the lease for one year so as to enable plaintiffs to break it and prepare it for tillage by the tenant for the remainder of the five-year term. Defendant also cross claimed for damages for his exclusion from the forty acres during the second year of the lease.

A jury was called to advise the trial court on the equitable issues and to determine the issue of damages. The special findings, and a verdict for $1 as damages, were in favor of defendant. Defendant's motion for judgment on the findings and verdict was denied; and plaintiffs' motion for a new trial was granted.

Defendant appeals. He contends that a contract cannot be reformed for the mistake of one party only; that he fully understood the contract; and that there was no mutual mistake. But the trial court may have thought he was not telling the truth about the matter. Perhaps the trial court did not fully believe the testimony for either party. We cannot tell what prompted the trial court to grant a new trial. The plaintiffs' evidence was sufficient to prove a mutual mistake—if the trial court gave it full credence. Perhaps the court did believe it; perhaps the trial court heartily disagreed with the findings of its advisory jury. One thing is certain: the written contract did not express the terms of the parties. It did not cover the reservation of the forty acres even for the one year which de-

fendant admits to have been reserved. There was to be a reservation of that forty acres, whether for the full term of the lease or for one year only; and to that extent there was a mutual mistake. Moreover, no written instrument which fails to truly recite the bargain of the parties could ever be reformed for mutual mistake if the one who resists its reformation could defeat its correction by his mere self-serving avowal that there was no mistake on his part. While the evidence to justify a reformation of a written instrument on the ground of mutual mistake must be clear, decisive and convincing, yet it may be so proved—and usually has to be—without the evidence of the party who resists and seeks to profit by the alleged mutual mistake. Furthermore, if indeed the forty acres was to be reserved for the full duration of the lease, and the defendant noticed the mistake of the scrivener at the time the lease was executed, and if he purposely or thoughtlessly kept silent about it, the want of mutuality in the matter of the mistake would not stay the hand of a court of equity to correct the writing, as the attitude of defendant in such case would be treated as a constructive fraud on his part. (*Cox v. Beard,* 75 Kan. 369, 89 Pac. 671; *Simpson Plumbing & Heating Co. v. Geschke,* 76 N. J. Eq. 475.)

The other matters urged by defendant need no discussion now. If the trial court, for any reason covered by the code (Civ. Code, §§ 305-308), was dissatisfied with the jury's verdict, it was its duty to set that verdict aside, and to grant a new trial. Ordinarily it is only when the trial court indicates the exclusive and specific ground upon which a new trial is granted, and that ground happens to be one which this court is in as good a position to consider and determine as the trial court, that reversible error can be effectively based upon the granting of a new trial. (*Ryan v. Topeka Bridge Company,* 7 Kan. 207; *Howell v. Pugh,* 25 Kan. 96; *City of Sedan v. Church,* 29 Kan. 190; *Sanders v. Wakefield,* 41 Kan. 11, 14 Pac. 251; *Manufacturing Co. v. Bowers,* 71 Kan. 260, 80 Pac. 565; *Goehenour v. Construction Co.,* 104 Kan. 808, 810, 180 Pac. 776; *Moffatt v. Fouts,* 105 Kan. 58, 181 Pac. 557.)

Affirmed.