No. 23,435.

A. F. INGERSOLL and B. DUFFEY, *Appellees,* v. THE KANSAS STATE BANK and FRED R. FITZPATRICK, as Receiver, *Appellants.*

### SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Acceptance of Bill of Exchange—Liability of Bank Thereon.* A bank organized under the laws of this state may accept a bill of exchange payable at a definite time in the future; the holder of the bill may maintain an action thereon, and he proves a *prima facie* cause of action against the bank when he establishes, by the pleadings and evidence, that the bill of exchange was drawn; that the bank accepted it; that he afterward became the holder of it; and that the bank refused to pay it.

2. SAME—*New Trial.* No error appears in the order granting a new trial.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed July 9, 1921. Affirmed.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and *B. I. Litowich,* of Salina, for the appellants.

*Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs commenced this action to recover on two bills of exchange accepted by the Kansas State Bank. A demurrer to the evidence of the plaintiffs was overruled; and a verdict for the defendants was returned by the jury. The verdict was set aside, and a new trial was granted. From the orders overruling the demurrer to the evidence and granting a new trial the defendants appeal.

One of the bills of exchange was as follows:

"Accepted Salina, Ks., Jan. 7, 1919. Kansas State Bank by H. J. Lefferdink, Cashier.

"Protested for nonpayment this 7th day of May, 1919, by me a notary public.                                            CHAS. F. SMITH.

"Salina, Kansas.   Jan. 7th, 1919.   No. 6942.

Pro. Fees, 1.52

"At 120 days sight Pay to the Order of Western Brokerage Company $5,000.00.   Five thousand Dollars.   Value received and charge to account of                          WESTERN BROKERAGE COMPANY

"By L. W. FLACK, *President.*

"To Kansas State Bank, Salina, Kansas."

Ingersoll v. Bank.

On the back of the instrument were the following indorsements:

"WESTERN BROKERAGE COMPANY,
    By L. W. FLACK, President.
    "Pay to the Order of any Bank, Banker or Trust Co. Prior Endorsements Guaranteed Apr. 23, 1919, No. 14816. The First National Bank, Cleveland, Ohio. C. E. Farnsworth, Cashier."

The other bill of exchange was the same except that it was drawn by, payable to, and indorsed by the Central Securities Company of Missouri, by V. E. Flack, President. The answer of the receiver admitted that the instruments were drawn as alleged and admitted that the cashier of the defendant bank wrote thereon the following words: "Accepted, Salina, Kan., Jan. 7, 1919. Kansas State Bank by H. J. Lefferdink, cashier." The answer denied that the bank had accepted the bills of exchange and that Lefferdink had authority to accept them, and alleged that the bank never received any consideration therefor and that the acceptances were made as part of a scheme to defraud the bank. The plaintiffs introduced evidence to show that they owned the two instruments at the commencement of the action, introduced them in evidence, and rested. A demurrer to the evidence was then overruled.

1. The defendants contend that the act of the bank was *ultra vires* and therefore void. This is made the basis of an argument that the demurrer to the plaintiffs' evidence should have been sustained.

The authority given to banks organized under the laws of this state is as follows:

"Any five or more persons may organize themselves into a banking corporation, and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor; and of buying and selling exchange, gold, silver, foreign coin, bullion, uncurrent money, bonds of the United States and of the state of Kansas, and bonds and warrants of cities, counties, and school districts in the state of Kansas, and state, county, city, township and school bonds issued in other states of the United States than Kansas; of loaning money on real estate, chattel and personal security, at a rate of interest not to exceed the legal rate allowed by law; of discounting negotiable notes and of notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business, of the value not to exceed one-third of the capital of such bank." (Gen. Stat. 1915, § 514, as amended by Laws of 1917, ch. 79, § 1.)

Section 556 reads:

"It shall be unlawful for any officer, clerk or agent of any bank doing business under this act to certify any check, draft or order drawn upon the bank unless the person, firm or corporation drawing such check, draft or order has on deposit with the bank at the time such check, draft or order is certified, an amount of money equal to the amount specified in such check, draft, or order. Any check, draft or order so certified by the duly authorized officer shall be a good and valid obligation against such bank."

What meaning is to be attached to the words, "check, draft or order," found in this section? The language is broad enough to include every written request made by any person to a bank for the payment of money. It does not matter what the technical name of the writing is; it can be described by one of the three words. The instruments sued on in this action come within these terms. There yet remains a consideration of the word "certified' as used in this statute. In ordinary transactions it means that there are funds in the bank with which to pay the check, draft or order, on which the certification is placed, and that the instrument will be paid when presented for that purpose. The language used might be any that would say that the money is in the bank and that the check, draft or order will be paid according to its terms. The word "accepted" written on a check by the bank on which it is drawn would probably be a good certification. The word "certified" written on a bill of exchange payable at a future time would probably be a good acceptance.

Section 557 should be considered in connection with section 556. Section 557 in part reads:

"Every . . . cashier . . . who . . . makes any acceptance . . . with intent . . . to injure or defraud the bank . . . shall be deemed guilty of a felony."

This statute recognizes the power of a bank to make an acceptance. An acceptance of what? Of any writing that the law requires should be accepted. It must refer to a payment to be made in the future by the bank. This necessarily includes bills of exchange payable at a future date. Sections 556 and 557 contemplate that a bill of exchange drawn against a bank may be accepted by it although the bill is made payable at a future time.

The defendants argue that the bank had no authority to loan

its credit or to become surety for another on any obligation. These two propositions may be conceded, but the difficulty with the argument is that it assumes that the bank was loaning its credit or becoming surety on the bills of exchange when there was no evidence introduced by the plaintiffs to show these facts. The written acceptances imported a consideration. (Gen. Stat. 1915, §§ 2040, 6551.) If the drawers of the bills of exchange had funds in the bank with which to pay the acceptances at the time they were made, there would have been a consideration for them. The same would be true if the drawers had made arrangements, by depositing securities or otherwise, to procure the acceptances by the bank. In either event the bank would have been bound. Not until the evidence of the defendants was introduced was it shown that there was no consideration for the acceptances. Even if that fact had been shown by the plaintiffs' evidence, and it likewise had been shown that the plaintiffs were innocent purchasers of the bills before their maturity for value, the bank would be liable under the negotiable-instruments law. (Gen. Stat. 1915, §§ 6654-6659.) By the acceptances the bank agreed to pay the bills of exchange. After the acceptances the bills circulated as commercial paper. Checks drawn by a bank's depositors, time certificates of deposit, cashier's checks, bank drafts, notes given by a bank for money borrowed, and the notes indorsed by a bank when transferring them, circulate as commercial paper. The bank's credit is behind each of them, and it is not excused from its obligation to pay on account of its credit being pledged.

The cashier was the proper agent of the bank to make the acceptances; the bills of exchange were accepted by the bank; they were negotiable instruments. (Gen. Stat. 1915, § 6654.) If the plaintiffs were innocent purchasers of the bills for value before maturity, the bank is liable thereon. The demurrer to the evidence was properly overruled.

2. Complaint is made of the judgment of the court granting a new trial. To support this complaint it is argued that a cause of action was not stated by the petition for the reason that it disclosed that the action was on an obligation that the bank had no power to incur. This proposition has been disposed of and need not be further discussed. No reason for his

action was given by the court; a new trial may have been granted for the reason that the verdict was against the evidence, that a fair trial was not had, or for any other one of the reasons for which a court is justified in granting a new trial. (*Cronk v. Frazier*, 86 Kan. 879, 122 Pac. 893; *Atkinson v. Darling*, 107 Kan. 229, 191 Pac. 486.)

The order overruling the demurrer to the plaintiffs' evidence and the order granting a new trial are affirmed.