No. 23,053.

MAY C. HAYMAKER, *Appellee*, v. CHARLES E. ALFORD and BYRD H. CLARK, *Appellants*.

### SYLLABUS BY THE COURT.

1. CANCELLATION OF WRITTEN CONTRACT — *Sale of Land — Mistake of Facts—Constructive Fraud.* The evidence is held sufficient to justify a finding that a contract for the sale of land was signed by the vendor under a wrong understanding as to its contents brought about in such a way that she was entitled to have it set aside, whether the basis of such relief is described as actual fraud, constructive fraud or excusable mistake.

2. SAME—*Special Findings Support the Judgment.* The special findings are held to support a judgment setting aside the contract referred to in the foregoing paragraph.

3. SAME—*Minds of Parties Never Met—Finding Warranted.* A finding that the minds of the parties never met and therefore that no contract resulted is held not to be outside the pleadings or evidence.

4. SAME—*Special Findings by Court—No Additional Findings Required.* In an action to set aside a written contract for fraud or conduct having the effect of fraud, where special findings were requested and those made were sufficient to require judgment for the plaintiff on the ground that she signed the contract under a mistake as to its contents induced by the conduct of the defendant, it is held not to have been prejudicial error for the court to refuse to make a further finding upon the issue of actual fraud, or upon an unimportant detail regarding the drafting of the contract.

5. SAME—*Evidence of Value of Land Sold Competent.* Where the vital controversy is over the price agreed to be paid for a tract of land, the testimony of the parties to the agreement being in conflict, it is competent to show the value of the property for its bearing upon the probability of the respective versions.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed November 12, 1921. Affirmed.

*John J. Jones, James A. Allen,* and *James W. Finley,* all of Chanute, for the appellants.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the appellee.

The opinion of the court was delivered by

MASON, J.: May C. Haymaker, a widow, was the owner of a quarter section of farm land, subject to a mortgage of $2,800. She had a talk with Charles E. Alford, who had been occupy-

ing it as a tenant, with regard to its sale to him.  Her version is that an oral agreement was reached that he was to have it for $6,500, he assuming the payment of the mortgage in addition to paying her that amount.  His version is that the agreement was that he was to pay $6,500, less the amount of the mortgage, which he was to assume.  The next day Alford, accompanied by Byrd H. Clark, a real-estate agent, called upon her at a place where she was employed as a nurse and a written contract was executed by Alford and Mrs. Haymaker by the terms of which he was to receive a deed upon paying her $3,700 and assuming the mortgage.  Five days later she brought this action against Alford, Clark also being made a defendant, asking for the cancellation of the written contract on the ground that she had signed it with the understanding induced by Alford that it provided for the payment to her of $6,500, the provision that she was to receive but $3,700 being due to a mistake of Clark, the scrivener, or made by design with the purpose of defrauding her.  The defendants answered, each denying generally the allegations of the petition, and Alford adding that the written contract was entered into by the plaintiff with full knowledge of its contents.  On a trial judgment was rendered in favor of the plaintiff, and the defendants appeal.

1.  The defendants contend that the issue involved was one of fraud, and that the plaintiff should have been denied relief because there was a total failure to prove fraud.  The petition alleges actual fraud, but if the plaintiff showed that she signed the written contract under a mistake as to its contents brought about by such means that equity should relieve her from liability thereunder, there would be no such variance as to preclude her recovery, even if the conduct of the defendants was not proved to amount to intentional, active fraud.  Conduct of one of the parties justifying the rescission or reformation of a contract by reason of its having been signed by the other under a mistake of fact is not always characterized as actual fraud.  Thus it has been said:

"Where the party's error as to the contents of his signed document is *known to the second party,* the first party may, of course, by the general principle (*ante,* § 2413), insist upon the terms as supposed by him, because these are identical with those which he appeared to the second party to be intending to utter.  In other words, the actual and therefore the reasonable consequence of his volition to express himself in certain

terms was precisely what the second party understood to be that expression. 1. The ordinary instance is that of *fraudulent misrepresentations* of the document's terms by the second party; . . . 2. Where the first party's error is merely *known to* the second party, *without fraudulent means* by the latter, the result is still the same, for the latter cannot claim that the first party's expressed words were reasonably so accepted by him; the only difference ought to be that in this case the first party should be satisfied with having the document reformed, while in the case of fraud he ought to be entitled to repudiate the entire transaction, by way of penalty upon the trickster. 3. Where the first party's error was *not known* to the second party, but was *induced by the latter's own conduct,* here also the first party may not be bound; for in such case it may well be that the terms actually expressed did not come to be expressed as the natural consequence of the first party's volition, but were due rather to the second party's own conduct. In that event the latter is not entitled to charge the former with them; . . ." (4 Wigmore on Evidence, § 2416.)

Of one of the situations referred to this court has said:

"Furthermore, if indeed the forty acres was to be reserved for the full duration of the lease, and the defendant noticed the mistake of the scrivener at the time the lease was executed, and if he purposely or thoughtlessly kept silent about it, the want of mutuality in the matter of the mistake would not stay the hand of a court of equity to correct the writing, as the attitude of defendant in such case would be treated as a constructive fraud on his part." (*Atkinson v. Darling,* 107 Kan. 229, 231, 191 Pac. 486.)

Likewise the term constructive fraud seems appropriate where the mistake of one of the parties is brought about by the conduct of the other, where a deliberate fraudulent intent is not established. The phrase to be used in describing the conditions that warrant rescission on account of the mistake of one party known to or induced by the other is not of vital importance.

There was evidence tending to show these facts: In the original talk between Mrs. Haymaker and Alford it was agreed that she was to receive $6,500. The contract was signed while she was the sole nurse in charge of a patient who was seriously ill, requiring her attendance at the bedside practically all the time. She was called from this service to sign the contract, which the defendants told her conformed to the oral agreement. She signed it in that belief without reading it, having confidence in both defendants, Alford being an old acquaintance and personal friend. She had had but little business

experience. She told Clark she was to receive $6,500 cash, the mortgage to be assumed by Alford. Clark undertook to read to her the written contract but did not read the clause stating that she was to receive but $3,700. This evidence was sufficient to sustain a finding of actual fraud. It also gave room to hold the contract voidable even without that finding, upon the ground that the plaintiff signed the contract under a misunderstanding as to its provisions brought about in such a way that she was not concluded by it, whether the element that relieves her is described as constructive fraud or excusable error.

2. The defendants further contend that the judgment was contrary to the special findings made by the court, particularly on the ground that they showed affirmatively that no fraud had been practiced upon the plaintiff. The findings recited these facts, about which there had been no dispute:

The written contract was supposed to have been drawn and executed in duplicate. The two copies, however, were not identical in terms. They were made by Clark, who filled in the blanks in typewritten forms which he carried with him. In these forms the recital of the agreement to sell, for an amount to be named, real estate to be described, was followed by the words: "First party agrees to execute warranty deed to the above premises free and clear of all incumbrances whatsoever." The blank for the agreed price in dollars was filled in in both copies with the figures 6,500, and in each the land was properly described. In the copy left with the plaintiff, however, but not in the other one, the words above quoted were followed by this insertion: "Except mortgage in the sum of $2,800, and interest from March 1, 1919." (The court found that this part of the written contract left with the plaintiff stated her understanding as to the consideration, while the corresponding part of the other copy stated the understanding of the defendants in that regard.) A subsequent clause in both copies was filled in so as to read: "Payments are to be made as follows: $100 cash in hand which is hereby acknowledged by first party, and assume present mortgage of $2,800 and interest at 6% from March 1st, 1919, and to pay the balance in cash of $3,600 on or before 90 days, making a total of $6,500."

The court found that at the time the plaintiff signed the contract she did not understand the clause just stated or the effect it had on the consideration as provided in the earlier paragraphs already described, and that this clause was not as she understood the oral agreement to be.

The court's findings that the first part of the copy of the written contract left with the plaintiff stated her understanding as to the consideration, while the corresponding part of the other copy stated the defendants' understanding in that regard, are interpreted by the defendants as referring to the understanding of the respective parties concerning the effect of the oral agreement. From this the defendants argue that as they were found to have understood the effect of the writing to be the same as that of the oral agreement they were acquitted of bad faith or any attempt to deceive the plaintiff or take advantage of her. We interpret the findings referred to as meaning that the first part of the plaintiff's copy stated her understanding of the effect of the written contract and the corresponding part of the other copy stated the defendants' understanding thereof, and under this interpretation the argument fails.

Alford testified that in the first talk with the plaintiff she suggested to him the price of $42.50 an acre. The court obviously discredited this testimony outright, for a price named on that basis cut off the opportunity for a misunderstanding, growing out of the existence of the mortgage.

Another finding read:

"That the defendants told the plaintiff that the written contracts dated June 7th, were the same as oral agreement of June 1st, which was not true, because of the difference in the written contracts it could not be true, and neither of said contracts were as the plaintiff understood them to be."

The defendants interpret this as meaning that the only reason the court believed the defendants to have spoken falsely when they said the written contracts were the same as the oral agreement was that such statement could not have been true inasmuch as the two copies of the written contract differed. The defendants argue that the court's conclusion was necessarily unsound because the two copies of the written contract in spite of verbal differences were of the same legal effect.

Haymaker v. Alford.

Again we disagree with the defendants' interpretation of the finding. The court did not say that the statement made by the defendants was untrue because the two copies were not alike, but that the statement was not true, and because of the difference in the writings it could not be true. The sentence introduced by the word "because" is complete in itself. We need not pass upon its correctness, because if inaccurate it does not vitiate the rest of the finding. The provision of the copy of the written contract left with the plaintiff, that in consideration of $6,500 she was to execute a deed to the property clear of incumbrance excepting a mortgage for $2,800, standing by itself would indicate that she was to receive $6,500 for her equity. The subsequent provision that the buyer was to pay $3,700 and assume the mortgage for $2,800, "making a total of $6,500," by reason of its greater definiteness might control, but the earlier recital was of importance because of its tendency to lead the plaintiff to understand that the written contract meant that $6,500 was to be paid to her.

Another finding read:

"The plaintiff understood by the oral contract that she was to receive $6,500.00 for her property and defendant to assume the mortgage of $2,-800.00, and never intended to sell her farm to the defendant for $6,500.00 and pay the mortgage of $2,800.00 out of that, while defendant claims that he understood he was to get the farm for the total sum of $6,500.00, as provided for in his written contract."

The defendants interpret this as deciding that Alford understood the oral agreement to provide for the payment of but $3,700 in addition to assuming the mortgage. This interpretation fails to take account of the language used by the court, which is that the plaintiff understood by the oral contract that she was to receive $6,500, while the defendant (Alford) "claims" that he understood she was to get but $3,700.

3. The defendants assert that in another finding the court went outside of the pleadings and of the theory upon which the evidence had been introduced, and thereby committed error. This finding read:

"These written contracts above referred to are so different in their terms regarding the consideration that in fact and in equity the minds of the parties to this action never came together. They really never agreed to the same thing, and no enforcing contract was made between them for the sale of the land. Their minds never met on the amount of consideration."

If the statement that the parties never agreed to the same thing is taken to mean that even in the preliminary conversation there was no agreement as to price the finding is not outside the pleadings or evidence. The plaintiff pleaded and testified that the oral agreement was that she should receive $6,500 for her interest in the land. The defendant Alford testified that the oral agreement was that he was to pay but $3,700 besides assuming the mortgage. Although the parties agreed that an oral contract had been made and differed only as to its terms, it would obviously be competent for the court to find that no contract had resulted from the oral negotiations because one understood the matter one way and the other the other. However, we read the finding as referring to the written contracts and as meaning that no valid contract resulted from the writings because while the defendants understood that on their face they called for a payment to the plaintiff of but $3,700, she supposed they provided for her getting $6,500, and was led to that understanding by circumstances (one of which was the difference in the language of the two copies) such that she was not precluded from questioning the effect of the writing, and therefore there was no meeting of the minds in legal contemplation as there was none in fact.

4. After the findings had been read the defendants asked a finding upon the question of fraud as alleged in the petition, and also findings as to the source of Clark's information at the time he wrote the contract, and upon which he prepared it. The court refused to make any additional finding and this refusal is complained of. For reasons that have already been sufficiently indicated we think the findings made by the court required the judgment that was rendered, because they involved a decision that the plaintiff had signed the contract under a mistake as to its contents induced by the conduct of the defendants. They clearly imply that her omission to read it before signing and her error as to its provisions were due to Alford's statement that it was in accordance with the oral agreement, aided by the circumstances under which it was presented to her. If the facts found compel the judgment that is rendered, a reversal is not required by the omission to make further findings. (*McCandless v. Kelsey*, 16 Kan. 557.) If it were established that the defendants did not deliberately and

purposely defraud the plaintiff this would not change the result. "If one of the parties does anything that influences the other party to enter into the transaction, through a mistake as to the true facts, the conduct of this party, whatever the spirit that may have actuated it, will not stand the scrutiny of the chancellor." (Story's Eq. Jur., 14th ed., § 168.) In view of these considerations we do not regard the court's refusal to pass upon that phase of the matter (for that is what the ruling amounted to) as prejudicial error. Nor do we see that it was important that findings should have been made as to the source of Clark's information upon which he prepared the written contract. He testified that he asked the plaintiff what consideration was to be placed in the contract and she told him she was to get $6,500, Alford to assume the mortgage and pay her the difference. He also testified that Alford and Alford's mother had already told him the substance of the deal, although Alford's testimony was that he had not done so. The plaintiff testified that she told Clark that she was to get $6,500 cash and the $2,800 was to be assumed by Alford. A finding that Clark received his information from Alford and the plaintiff, or from Alford's mother and the plaintiff, which would have been as favorable for the defendants as their own evidence would justify, would not have affected the result.

5. Complaint is made of the admission of evidence of the value of the farm. The court found that it was worth at least $8,000. We consider the evidence competent as having some bearing upon the probability of the plaintiff having agreed to sell it for $6,500.

The judgment is affirmed.