No. 29,970.

JETTIE RUSSELL, *Appellant*, v. JAMES E. ELY and NELLIE M. ELY, *Appellees*.

(299 Pac. 619.)

Opinion filed June 6, 1931.

*R. C. Russell*, of Great Bend, for the appellant.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming*, all of Garden City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a foreclosure action brought by Jettie Russell against James E. and Nellie M. Ely, his wife. It resulted in a judgment that the mortgage and notes be reformed as to a date, and foreclosure was denied. ' Plaintiff appeals.

The defendant, Ely, a dealer in real estate, in December, 1928, entered into an option agreement with the plaintiff to purchase the mortgaged land. The agreement relating to the purchase was made by correspondence. The option proposed by plaintiff was accepted by the defendant, Ely, on December 19, 1928. It provided that defendant was to have a twelve months' option to purchase the land at a price of $2,400, $100 being paid for the option at the time with

the agreement that if a purchase was made the $100 was to be applied on the initial cash payment, which was fixed at $800. The cash payment was to be made when plaintiff furnished the customary papers showing good title in the land, the balance of $1,600 was to be payable in one-, two-, three- and four-year equal payments of $400 bearing interest, from the time the papers were exchanged, at six per cent. The deferred payments were to be secured by a first mortgage. On December 8, 1929, the defendant exercised his option by a written notice that he would take the land in accordance with the option agreement. Plaintiff at once prepared and sent by mail to defendant an abstract of title, but the letter with the accompanying abstract was never received by defendant. Later the attention of defendant was called by plaintiff to the fact that the abstract had been mailed to him, and urged that the transaction should be closed, and stating that a deed was prepared and ready for delivery. Defendant asked plaintiff for the date on which he sent the abstract, whether it was sent by special delivery or ordinary mail, and stating that he had made a search for it but found none. In another letter he informed plaintiff that he had been gone from home some time and stated that he would try to find the abstract which plaintiff said he had sent to him, and then added, "Sure I want the land."

The abstract not having been found, defendant concluded to complete the transfer without an abstract and sent a check first for $500 and a few days later another check for $200. When the $500 payment was made, plaintiff on April 24, 1930, wrote to defendant calling attention to the fact there was $700 due on the initial payment and that interest would be due thereon up to the present date. At the same time he inclosed prepared notes and mortgage, covering the $1,600 balance, stating:

"This is due in four equal annual payments of $400 each with interest at six per cent. If you and your wife will kindly execute these notes and the mortgage, and send the same down to me, I will forward the deed to you at once. This deed has been on my desk for several months, ready for delivery. No doubt you will be able to locate the abstract in due course, and I feel quite certain you will find the title O. K."

The closing of the transaction was thus delayed until May 7, 1930. Plaintiff insists that the abstract was mailed in January, but appellees are equally insistent that the abstract never came to nor was received by them. The note and mortgage which were

prepared by plaintiff and forwarded by mail were executed by appellees and returned by mail to plaintiff. When plaintiff prepared the papers she dated them December 19, 1929, made the interest payable semiannually and inserted a provision that upon default of payment of interest the mortgagee might declare the whole amount due and foreclose it at once, and she also inserted a clause providing for ten per cent interest after default. Appellees noticed the provision for ten per cent and changed it to six per cent, but did not read the instruments through, and signed them believing they were drawn in accordance with the terms of their written contract, and returned them to plaintiff. When the first semiannual installment of interest became due the plaintiff declared the whole debt due, without notice to appellees, and began this action to foreclose the mortgage. The answer of appellees was that under the agreement the deferred payments of the purchase price were to bear interest from the date that the deed was executed and papers exchanged, that the deed was not received until the 7th day of May, 1930, and that the mortgage and notes should have been dated as of that time, but by mutual mistake or the design of plaintiff, the notes were dated December 19, 1929, and that the defendants were entitled to have the notes reformed to comply with the contract. As stated, the court reformed the instruments and denied the foreclosure.

There can be no dispute as to the terms of the contract, as it is in writing, signed by both parties. It provided that the cash payment was to be made when plaintiff delivered the deed and abstract showing title, and that a mortgage for the balance was to be executed in accordance with the terms of the contract payable in four equal installments with interest at six per cent from the time of exchanging papers. That was the time when interest was to begin to run. Because plaintiff prepared and sent an abstract at the expiration of the option in December, 1929, she claims interest from that time, and in the mortgage prepared by her she wrote into it that the interest was to run from that date. That provision was not in accordance with the plain terms of the contract, and it appears defendant signed it without noticing that it was contrary to the contract. The court found for the defendant, holding that it was a mistake, that reformation should be made and the plaintiff is not in a position to claim there was no mistake. It is contended that it was not a mutual mistake, but the fact that she claims she did not

regard it as a mistake is not controlling in this equitable action where the provision was repugnant to the written contract of the parties. Where there is mistake on one side and inequitable conduct on the other, the remedy of reformation is available. In such a situation it has been said:

"Moreover, no written instrument which fails to truly recite the bargain of the parties could ever be reformed for mutual mistake if the one who resists its reformation could defeat its correction by his mere self-serving avowal that there was no mistake on his part. While the evidence to justify a reformation of a written instrument on the ground of mutual mistake must be clear, decisive and convincing, yet it may be so proved, and usually has to be, without the evidence of the party who resists and seeks to profit by the alleged mutual mistake." (*Atkinson v. Darling,* 107 Kan. 229, 231, 191 Pac. 486.)

See, also, *Cox v. Beard,* 75 Kan. 369, 89 Pac. 671; *American Nat'l Bank v. Marshall,* 122 Kan. 793, 253 Pac. 214.

Plaintiff does not deny that the questioned provision in the mortgage was in conflict with the provisions of the contract. The fact that there was delay in closing the transaction because of the loss of the abstract did not operate to change the terms of the agreement. The further fact that defendants did not carefully read the papers prepared and forwarded to them by plaintiff does not bar a reformation. (*Zuspann v. Roy,* 102 Kan. 188, 170 Pac. 387.)

We conclude that the court was warranted in adjudging a reformation in accordance with the contract of the parties.

The judgment is affirmed.