No. 36,434

GEORGE P. HOUGH and NELLIE M. HOUGH, *Appellants*, v. EMMA R. MUNFORD and R. H. MUNFORD, Husband and Wife, et al., *Appellees*.

(164 P. 2d 92)

Opinion filed December 8, 1945.

A. W. *Relihan,* of Smith Center, argued the cause, and *T. D. Relihan,* of Smith Center, was on the briefs for the appellants.

N. J. *Ward,* of Belleville, argued the cause, and *Frank G. Spurney,* of Belleville, was on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to reform a deed and to quiet title to real estate. Judgment was for defendants. Plaintiffs appeal.

The tract in question was a town lot about thirty-five feet wide and about one hundred feet long. The petition alleged that defendants through their duly authorized agent entered into a contract with plaintiffs for the sale of the lot for $2,550; that the agent for defendants drew the contract and at the time it was executed by the agent for defendants and plaintiffs they paid him $200 in accordance with its terms. The petition further alleged that defendants delivered to plaintiffs a deed which purported to comply with the contract and that the lot in question was described in the deed, as follows:

"A fraction of Block Seven (7), of the original townsite of Belleville, Republic County, Kansas, described by metes and bounds, as follows: Commencing at a point four feet west of the southwest corner of lot six (6) of said block, thence running north one hundred and eight (108) feet, thence west thirty-five feet, thence south one hundred eight (108) feet, thence east to the point of the beginning."

The petition further alleged that plaintiffs believed the deed contained the correct description of the lands intended to be conveyed and accepted it; that the deed did not contain a correct description; that such incorrect description was used through the mutual mistake of the parties or by mistake of the plaintiffs induced by the fraud and concealment of the defendants and their agent; that plaintiffs relied solely upon defendants to furnish a deed containing a correct description, which should have been as follows:

"A fraction of block seven (7), of the Original Townsite of Belleville, Republic County, Kansas, described by metes and bounds as follows: Commencing at a point ninety-nine and seven tenths feet (99.7) west of the Southeast corner of lot six (6) of block seven (7), thence north one hundred eight (108) feet, thence west thirty-nine and three tenths feet (39.3), thence south one hundred eight feet (108), thence east to the point of beginning."

The petition also alleged that plaintiffs paid $200 to the agent

upon the signing of the contract and $1,100 upon the delivery of the deed and delivered their note secured by a mortgage on the lot for $1,250 due three years from date; that upon delivery of the deed and the payment of the above sums the plaintiffs were given possession by the defendants and entered upon the premises. The petition further alleged that in order to make the deed conform to the actual intentions of the parties it should be reformed so as to contain the description set forth in the contract; that they have requested defendants to execute such a deed but they refused to do so. The petition further alleged that the plaintiffs were the owners and in actual possession of the land described; that the defendants claimed some right of ownership therein and whatever claim they had was inferior and subject to the title of plaintiffs. The prayer was that the deed be reformed and the plaintiffs' title be quieted against any claim of defendants. The contract in question was attached to the petition. It provided that the first parties agreed to sell the land in question to the second parties for $2,550 and stated that the exact description could not be given at that time but that the tract was approximately as follows:

"Beginning at a point about 104 feet west of the southeast corner of lot 6 of block 7 of the original townsite of the city of Belleville, Republic County, Kansas, thence north past the west end of the hospital building on a line one feet west of the west foundation of the same after the porch on the west end is removed, and thence north to a point 2 feet south of the garage, thence west to a point 2 feet west of the garage thence north to the north side of the property owned by the first parties, thence west to the Ira Hinks property thence south to the southeast corner of the last named property and thence east to the place of beginning. It being understood that the frontage of said tract being sold is at least 35 feet."

The contract then set out the terms of the sale and also provided that the exact description of the tract would be thereafter ascertained by agreement between parties and if it was necessary a surveyor would be procured to ascertain the proper location at the expense of the parties of the first part. The deed was also attached, which contained the usual warranties and the description which has heretofore been set out in this opinion.

The defendants answered first that the action was in personam and not one concerning real estate; then a general denial; and a further denial that the agent in question was the duly authorized agent of the defendants; that they did not execute or authorize the execution of the contract which was attached to the petition; that

defendant Emma R. Munford was the owner of the tract described in the deed and also the tract immediately east of it, described as follows:

"Beginning at the southeast corner of said block 7 of the city of Belleville, Republic County, Kansas, thence west 104 feet, thence north 108 feet, thence east 104 feet thence south to the place of beginning."

The defendants answered also that the above-described tract was contiguous to the land bought by plaintiffs and owned by Emma R. Munford for at least ten years prior to the making of the deed and the two tracts had been continuously occupied by defendants as their homestead and after the execution and delivery of the deed, exhibit "B," the defendants continued to hold their homestead rights in the balance of the premises not conveyed by the deed; that an abstract was furnished plaintiffs which covered the real estate described in the deed and this abstract and deed were approved and accepted by the plaintiffs shortly thereafter; that the plaintiffs before and after receiving and recording the deed made independent investigations concerning the description set forth in the deed and accepted it and moved onto the property, and by their conduct and acts had ratified and approved the description set forth and if there was any error, which defendants denied, the plaintiffs by their acts were estopped from questioning it; that in November, 1944, Emma R. Munford agreed to sell to one C. C. Thomas the tract of land lying immediately east of the tract described in exhibit "B"; that this contract was made prior to the time that these plaintiffs made any claim as to any erroneous description; that Thomas became the bona fide purchaser of the premises; had made a substantial payment on the purchase price and that defendants had executed a deed to him for this land, part of which was being claimed by the plaintiffs. The answer also alleged that defendants were willing to take back the real estate conveyed and to return to plaintiffs the money that had been paid on the contract by plaintiffs.

The plaintiffs replied admitting that the real estate described in the answer was owned by the defendants prior to the execution of the contract and deed set out in plaintiffs' amended petition and alleged that the contract and deed were each a part of a single transaction and that defendants gave their joint consent to this deed and contract; that the defendants had accepted the benefits of the contract marked exhibit "A" and recognized it as binding and had never questioned its validity or the authority of their agent until

after the commencement of this action; that defendants were estopped to deny the authority of their agent or to question the validity of the contract.

The trial court made findings of fact and conclusions of law in favor of defendants. Plaintiffs moved for judgment on the findings and admitted facts. This motion was overruled and judgment was rendered for defendants. Plaintiffs' motion for a new trial was overruled. Hence this appeal.

The defendants had owned a tract of land one hundred thirty-nine feet long and about one hundred feet wide. It is generally spoken of in this record as a part of the south half of block 7 in the original townsite of Belleville. On this tract near the southwest corner is located what is spoken of as a small dwelling house. To the east of this small house with its west wall 13.3 feet distant from the east wall of the dwelling house is a house which is spoken of in the record as a hospital. It is also used as a dwelling house. The defendants sold to plaintiffs the small dwelling house to the west. The dispute in the case is as to how much land was sold with it or, stated another way, the dispute is as to the location of the east line of the tract that was sold. As long as defendants had owned the land in question it had never been divided. It was just a tract one hundred thirty-nine feet east and west and about one hundred feet north and south. The first description chronologically with which we are concerned is the one which appears in the contract exhibit "A." It will be noted that this description begins at a point one hundred and four feet west of the southeast corner of the tract. As far as that much of the description is concerned one to understand it would naturally hunt up the southeast corner and measure west. After locating the place of beginning, however, the description stated that the line which would be the east line of the tract being sold to plaintiffs would run north on a line one foot west of the west line of the hospital. One reading this description could not very well help concluding that the east line of the property being sold was to be just a foot west of the hospital. It is true there was a jog in this line toward the north because a garage was located on the line. This, however, was adjusted to the satisfaction of all parties before the deed was given. The description after reaching the north line provided that it should extend west to the Ira Hinks property, thence south to the southeast corner of the

Ira Hinks property, thence east to the place of beginning. It is clear that this described all the land owned by defendants from a line one foot west of the west line of the hospital on .west to the Hinks land. Further weight is given this by the fact found by the trial court that at the time the contract was executed the agent at the request of one of plaintiffs changed the figure "2" to a "1", in speaking of the distance the east line of the property being sold was to be from the west wall of the hospital. Another change was also made at that time as to the distance the line was to be from the garage. This contract was drawn by the agent for defendants. It was duly executed by plaintiffs in their own behalf and by an attorney in Belleville, who had drawn the contract, as agent in behalf of the defendants, who were living in California at the time. The trial court found that no written authority was given the lawyer to contract in their name for the sale of their real estate. As told in the findings of the trial court the lawyer sent a copy of the contract to defendants and advised them it had been executed; that defendants read the contract and decided to make the sale; that the east line of the tract should be further west than provided in it and that Mrs. Munford should come to Belleville, fix this line by measurement and complete the sale; the court found that they understood they were not bound unless the boundary line could be fixed to their satisfaction. Mrs. Munford came to Belleville and had a number of conversations with plaintiffs with reference to giving possession and with reference to moving the garage so that the east line of the tract would be a straight line. Soon after her arrival in Belleville Mrs. Munford caused a surveyor to locate the southeast corner of the block and to fix a point one hundred and four feet west of it. This turned out to be 5.3 feet west of the west line of the hospital. She determined that this should be the dividing line or the east line of the tract being sold to plaintiffs; none of the facts were communicated to plaintiffs but they were advised that defendants would convey to them in performance of the contract and the agent of defendants would leave the deed and other papers at the bank for settlement. Plaintiffs went into possession of the tract about June 1, 1944. On June 14, 1944, an official of the bank handed them a deed for it, which Mr. Hough read. At that time he paid the bank $1,100 and they both executed a note and mortgage for $1,250. Plaintiffs had previously caused the abstract and title to be examined by their attorney and also the contract, exhibit "A."

The description of the land, which was contained in this deed, now becomes important. It has been heretofore set out in this opinion. It should be noted in passing that it commences at a point four feet west of the southwest corner of lot 6. This is a different starting point than was used in the description in the contract. The description then provided that the line should run from the point of the beginning one hundred and eight feet north. It will be. remembered that the description in the contract said that this land would be on a line a foot west of the west boundary of the hospital. The description in the deed avoided any such reference as to how far distant from the hospital the line would be. Actually the east line as provided in the deed was 5.3 feet west of the hospital. It ran from the point one hundred and eight feet north of the place of the beginning west thirty-five feet, then south one hundred and eight feet, then east to the place of the beginning. One not skilled in discerning differences in descriptions of real estate would not understand that this east boundary line .was changed from what the contract provided. The court found that no one made any statement to either of the plaintiffs as to this description or as to the location of the east boundary line except that when the deed was offered to be recorded there was some discussion as to its certainty. The court found that plaintiffs inspected the premises before taking possession and had been in possession about two weeks before they accepted the deed and that reasonable inspection by them would have disclosed that the east boundary line as stated in the deed would be considerably more than a foot west of the boundary of the hospital building. Plaintiffs continued to occupy the premises and pay taxes and pay interest. The only means of access to the premises is from the south adjacent to the public street. There was no evidence offered as to room for a driveway from the north but the court found from its common knowledge that there would not be room for a driveway on plaintiffs' land under the description in the deed. The porch on the west side of the hospital was removed according to agreement.

The court further found that on November 13, 1944, which would be about five months after the deed was given to plaintiffs, Mrs. Munford contracted to sell the east one hundred and four feet of her premises to one C. C. Thomas for $5,750 and that he paid her $3,000 at that time; that shortly after this Thomas employed the county engineer to fix the corner and the engineer found that the

west boundary line of this tract would be 5.3 feet west of the west side of the hospital. While this survey was being made Mrs. Hough learned from the engineer that part of the ground which he thus found to be in the tract that was being sold to Thomas was land which she and her husband understood they had bought. After some correspondence this action was brought. The plaintiffs asked to have their deed reformed so as to convey 39.3 feet in width in place of thirty-five feet so that the division line between the two pieces of property would be at a point one foot west of the foundation of the hospital rather than 5.3 feet. The defendants asked that the Thomases be made parties defendant. This motion was allowed.

The Thomases answered asking that their title to the whole of one hundred and four feet be quieted. The plaintiffs asked that this pleading be stricken so far as being a defense to their action on the ground that they were not innocent purchasers because they had received notice of the claim of the plaintiffs both before and by the commencement of this action. This answer was stricken by the trial court so far as it purported to set up a defense to the action of plaintiffs against the Munfords. At the trial plaintiffs called Thomas to the stand and proved his contract by him and that it did cover the whole of the one hundred and four feet.

Defendants in their answer and by proof offered to restore to plaintiffs the full amount of the purchase price paid by them and all moneys expended for taxes and interest should they elect to rescind and reconvey, but plaintiffs declined to so act. The court made conclusions of law, as follows:

"*a*. The defendants Munford were and are not bound under the contract in question, except to the extent they jointly acted, and which is reflected and shown by the deed delivered to the plaintiffs.

"*b*. Said defendants Munford were not prohibited under the contract or otherwise from determining upon and tendering the deed which fixed the east boundary line of the premises conveyed at a point substantially farther west than 1 foot from the foundation of the building on the unsold portion of the Munford premises.

"*c*. The facts as found show no estoppel against the Munfords arising from their acts and conduct or silence which prevented them from asserting in this action they were not bound to convey more than the premises described in the deed delivered to plaintiffs.

"*d*. Because all of the premises involved herein constituted the homestead of the Munfords, and because of the terms of the contract and the indefiniteness of the property described therein, and the provision in the contract for

subsequent determination of the description and extent of the property to be conveyed, and further because of the want of authority in writing on the part of N. J. Ward to bind the Munfords, as well as the other circumstances shown by the evidence, his acts as their agent were only binding upon them to the extent they jointly acted in ratifying and performing the contract signed by him. This was and is to the extent only of their joint conveyance and alienation of the portion of their premises described in the deed in question.

"*e*. No legal duty rested upon the defendants Munford or N. J. Ward under the circumstances to advise plaintiffs in respect to the premises conveyed by the deed tendered to and accepted by them, and they were not legally misled by any acts or statements by, or silence on the part of, any of said parties with respect thereto.

"*f*. No reformation of the deed in question can be either legally or equitably ordered by the court in this question."

Judgment was entered in accordance with the above conclusions.

Defendants in this court argue first that there was no valid contract by which the reformation sought might be made, that is, they argue there is no valid contract by which defendants agreed to convey any land other than was conveyed by them in the deed. The basis of that argument is that the lawyer who drew the contract and caused the plaintiffs to sign it and make the $200 down payment, which was provided therein, had no authority in writing to sign a contract for the conveyance of land. The trouble with that argument is that the defendants upon being advised of the execution of the contract by the lawyer accepted its benefits and carried it out, the only difference being their mental reservation that they would use a different description in the deed by which they sought to carry out the contract than was used in the contract itself. Under such circumstances they cannot take advantage of the statute of frauds. See *James v. Manning*, 79 Kan. 830, 101 Pac. 628, also *Newkirk v. Marshall*, 35 Kan. 77, 10 Pac. 571; *Harris v. Harper*, 48 Kan. 418, 29 Pac. 697; also *Gilmore v. Asbury*, 64 Kan. 383, 67 Pac. 864.

Defendants next point out the provisions of G. S. 1935, 33-106 and 60-3503. These sections provide that the husband and wife are not bound by any contract for the sale of real estate unless it is in writing jointly executed by themselves or by their agent jointly authorized in writing. They point out that the court found they did not authorize their agent to make a contract of sale and hence plaintiffs in effect seek by their action to compel defendants to perform an act which they did not agree to perform.

It is a little difficult to see the application of these statutes to this case in view of the fact that the plaintiffs seek to reform a

deed which defendants admit they joined in making. Neither is there any contention by defendants but that their acts with reference to the contract were as much the acts of one spouse as the other. They both saw the description in the contract and they both concluded to convey a different tract of land from that described therein.

Defendants next point out that the court found that from the time about the first of June, when plaintiffs moved onto the premises, to the 15th of June, when the deed was given, the plaintiffs had ample opportunity to ascertain for themselves the approximate location of the east boundary line of the land that they were going to buy. The trouble about that is there was nothing there at that time to mark the boundary line and they had no reason to believe that the description would be other than was contained in the contract, Had they looked at their contract they would have assumed that the line was a foot west of the hospital.

Defendants next point out the finding of the court to the effect that there were no representations or statements to the plaintiffs concerning the description by the Munfords or by their agent. They argue that this is not a case of intentional or mistaken description but one where the contract provided that the line was to be ascertained at a later time. The fact is, however, that as disclosed in the findings and the undisputed evidence the plaintiffs were justified in assuming that when Mrs. Munford came to Belleville from California and had a number of conferences with plaintiffs had she intended that the description in the deed should be other than was contained in the contract she would have so advised them.

All parties concede that from the time the Munfords first saw the contract in California until they handed the banker the deed to be given to the Houghs they never had any intention of abiding by the description that was contained in the contract. Equity and fair dealing require that they should have so advised plaintiffs.

In *Zuspann v. Roy,* 102 Kan. 188, 170 Pac. 387, this court held, as follows:

"A mutual mistake in a deed conveying real property may be shown, although the parties thereto did not, before it was signed, carefully examine it to ascertain whether it expressed their agreement."

See, also, *Stephenson v. Elliott,* 53 Kan. 550, 36 Pac. 980, and *Claypoole v. Houston,* 12 Kan. 324.

Where it is clear that the description in a deed is other than that

intended by the parties the deed may be reformed to express the intention.

In *Russell v. Ely*, 133 Kan. 318, 299 Pac. 619, we had a situation somewhat similar to this. There we held:

"An instrument, prepared by one party, not in accord with a prior written agreement of the parties, as to its terms, when executed by the other party without observing the mistake in the instrument, may be reformed where it is clearly shown that there was a mistake on the part of one party and inequitable conduct of the other."

See, also, *Cox v. Beard*, 75 Kan. 369, 89 Pac. 671.

Attention is called to the fact that in *Russell v. Ely*, supra, we said that a mistake on the part of one party and inequitable conduct on the part of the other would warrant a reformation of an instrument to express the real intention of the parties. There can be no doubt but that the plaintiffs here were mistaken when they accepted the deed. They thought the description would be what was contained in the contract. Neither can there be any doubt but that the findings of the trial court make out a case of inequitable conduct on the part of the defendant. They saw the contract and noted the description it contained. They concluded that instead of following that description they would use one which would result in plaintiffs getting several feet of ground less than they had a right to expect they were getting. It was inequitable conduct on their part to have several conferences with plaintiffs about moving the garage and other details of the line and to fail to disclose to plaintiffs that it was not their intention to comply with the contract. It follows that the motion of the plaintiffs for judgment on the findings of the trial court notwithstanding the conclusions of law should have been sustained.

Defendants argue that this appeal should be dismissed because the Thomases were not made parties to it. The answer of the Thomases was dismissed as far as the plaintiffs were concerned. If the defendants sought to raise any question with reference to that answer they should have cross-appealed. As far as plaintiffs, who are the appellants here, are concerned the Thomases are out of the case.

The judgment of the trial court is reversed with directions to enter judgment for the plaintiffs.