Waddle v. Bird.

No. 27,116.

O. S. WADDLE et al., *Appellees*, v. A. J. BIRD et al., *Appellants*.

SYLLABUS BY THE COURT.

1. REFORMATION OF INSTRUMENTS—*Nature and Scope of Remedy*. The office of the remedy to reform an instrument is not to make a new instrument nor to supply terms upon which the minds of the parties have not met.

2. SAME—*Mutual Mistake—Sufficiency of Evidence*. If mutual mistake is relied upon for a reformation, the evidence must show affirmatively, clearly and beyond reasonable doubt an intention by the parties to make an instrument such as is sought to be established.

3. SAME—*Sufficiency of Evidence*. The evidence examined and held to be insufficient to justify a reformation of the contract in question.

Appeal from Stafford district court; RAY H. BEALS, judge. Opinion filed February 12, 1927. Reversed.

*F. Dumont Smith* and *Eustace Smith,* both of Hutchinson, for the appellants.

*F. L. Martin,* of Hutchinson, *Robert Garvin* and *Evart Garvin,* both of St. John, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This proceeding was brought by plaintiffs who were directors of the Hopewell Coöperative Equity Exchange against the defendants, who were stockholders of the exchange, to obtain equitable contribution on liabilities assumed and paid by the plaintiffs in behalf of the members of the exchange. The exchange was a corporation organized to carry on the business of buying farm products and selling merchandise and supplies to its members and others in the community. Prior to June 12, 1918, the exchange found itself without sufficient funds to carry on the business, and the directors who had been providing money on their individual credit to keep it going, reported to the annual meeting of the stockholders the financial condition of the exchange. At that stockholders' meeting, the directors asked the stockholders to join in raising a fund of $25,000 deemed to be necessary to continuing the business. To accomplish their purpose the members then voted to and did amend the by-laws of the exchange so as to authorize its officers to borrow the money necessary to transact the business and

Reformation of Instruments, 34 Cyc. pp. 910 n. 47, 984 n. 33, 987 n. 36; 23 R. C. L. 311, 320.

to execute notes for such loans and renewals as might be needed. On the same day the stockholders unanimously adopted a motion that each member of the exchange should sign up as security to a bank for the money needed to transact the business. The officials, with the consent of its members expressed in a resolution, decided to transact business with the Farmers State Bank of Hopewell, although before that time they had been doing business with the Macksville State Bank and had a deposit therein of $745.30. In accordance with the resolution a contract was prepared reciting:

"Know All Men by These Presents: That we, the undersigned, being stockholders or other interested parties in The Hopewell Coöperative Exchange, a corporation duly organized and existing under and by virtue of the laws of the state of Kansas, do hereby request the directors of said The Equity Exchange to bond and pledge themselves individually to The Farmers State Bank of Hopewell, Kansas, for the purpose of obtaining credit for said The Equity Exchange in the amount of twenty-five thousand dollars.

"Now, if the directors of said The Equity Exchange will so bond and pledge themselves individually to said bank, we the undersigned stockholders hereby agree that we will reimburse said directors for any loss arising on account of said bond or pledge up to and including the sum of five hundred dollars each; it being our intention that each signer of this instrument shall stand individually liable for any sum up to and including five hundred dollars for the purpose of making said directors safe in signing said pledge, or bond, to said bank.

"In case any loss is sustained by said directors on account of said bond or pledge, we hereby agree promptly to reimburse said directors for said loss; it being distinctly understood, however, that no one stockholder shall be called upon to pay more than five hundred dollars.

"In Witness Whereof, We have hereunto set our hands this —— day of June, A. D. 1918."

This contract and obligation was signed by each member of the exchange. Following the proceedings at the annual meeting, and the execution of the writing quoted, the directors executed and indorsed notes upon which money was obtained for some time of the Farmers State Bank of Hopewell, but that bank with a capital of only $10,000 found itself unable to carry so large a loan as was demanded, and reported that it was not authorized to carry more than $6,000. Then the board of directors borrowed money at the Macksville State Bank sufficient to meet the obligations to the Farmers State Bank of Hopewell and took up the notes which they had previously and personally indorsed. The First State Bank of Macksville required the plaintiffs to become personally responsible for

the loans made to the exchange and they did execute notes to that bank, first for the sum of $15,000 and afterwards from time to time the loans were increased to the amount of $22,000 and with the money so obtained they paid off the obligations to the State Bank of Hopewell, being the notes previously issued aggregating more than $23,000.

Plaintiffs alleged that a mutual mistake was made in the contract quoted in that it should have included after the name of the Farmers State Bank of Hopewell the words "and such other banks or persons as may be necessary." Recognizing that the obligations of defendants sought to be enforced ran to the Hopewell bank and not to the Macksville bank from which plaintiffs had borrowed money and had assumed personal responsibility for unpaid loans, amounting to more than $15,000, plaintiff asked that the obligation executed by defendants should be reformed by adding the words "and such other banks or persons as may be necessary," making it read so that defendants "pledged themselves individually to the Farmers State Bank of Hopewell, Kansas, and such other banks or persons as may be necessary." The question of reformation was the only contested issue upon which proof was submitted. In the midst of the trial the court asked if the allegation and controversy was that of mutual mistake in making the contract, and counsel for both parties replied in the affirmative. Considerable testimony was offered on the subject, but we are unable to find any substantial evidence in the record showing mutual mistake upon which reformation can be based. The defendants obligated themselves to the Hopewell Bank, and a number of them conceded their liability on the obligation as written until it had been discharged. They had of course the right to choose their obligee and their liability could not be extended to another without their consent. That the guaranty as written did not bind them to stand liability to other parties, was conceded by the demand of plaintiffs for reformation. A witness introduced by the plaintiffs to show mutual mistake, stated that the contract expressed the intention of the parties and that "nobody thought that the words 'any other bank' should have been inserted." Another witness, one of the plaintiffs, testified that no one suggested that there was a mistake in the contract, and when the court called his attention to the allegation in his petition that a mistake had been made he replied, "I do not know that I said there was a mistake or not." Another witness for the plaintiff, when asked if he had dis-

covered that the bond ran to the Hopewell bank, stated that his attention had not been called to the matter of mistake until shortly before the suit was brought and that he did not dream of there being a mistake until his counsel told him. After the admission of this testimony which was all that was offered by plaintiffs touching mutual mistake, the defendants filed a demurrer to the evidence which the court overruled. It is manifest that the evidence offered by plaintiff did not clearly and affirmatively show grounds for reformation and hence defendants' demurrer should have been sustained. The defendants then offered testimony on the question, but their testimony did not aid in making out a case for plaintiffs. Witness after witness connected with the transaction came upon the stand and testified that the contract as made expressed the agreement or intention of the parties that previous to the execution of the contract a resolution had been adopted to do business with the Hopewell bank; that they understood that they were signing an obligation to that bank; that their guaranty was not to be extended to any other, and that the contract signed stated the intention and wishes of the defendants as expressed at a previous meeting of stockholders. No witness gave affirmative testimony that a mutual mistake had been made in regard to the omission of words sought to be inserted in the contract. Under the evidence the contract sought to be established is not the one which was in the minds of the parties when the contract was executed. The remedy or reformation may be invoked to ascertain and enforce a contract actually made, but it can never be employed to make a new contract nor to supply terms upon which the minds of the parties never met. As to the measure of proof necessary for the reformation of an instrument on the ground of mutual mistake, it has been determined that it must be clear and convincing. "It is not enough that it shows a probability of mistake, but there must be a moral certainty of it; in other words, it must be established beyond a reasonable doubt." (*Bodwell v. Heaton,* 40 Kan. 36, 39, 18 Pac. 901.) In *Brundige v. Blair,* 43 Kan. 364, 23 Pac. 482, it was held that "to authorize a court to rectify a contract, and insert other and additional terms and conditions therein, the proof must be full, strong and clear, and the facts shown beyond reasonable controversy." (Syl. ¶ 1. See, also, *Schaefer v. Mills,* 69 Kan. 25, 76 Pac. 436; *Kratz v. Padfield,* 111 Kan. 396, 208 Pac. 776.) Plaintiff calls attention to another agreement introduced in evidence which was made by some of the defendants about six years after the execution

of the one which plaintiffs asked to be reformed. That agreement, however, was not pleaded nor made the basis of the judgment that was entered. It will be time enough to consider the effect or liability upon that instrument when an action is brought thereon. Considerable is said in the brief about subrogation which was pleaded in the second count of the petition, but that question was not considered or determined by the trial court as its judgment indicates. The consideration of the court was confined to the matter of reformation of the contract of June, 1918, and the record discloses that the judgment went no further than that the contract should "be changed and reformed as prayed for in plaintiffs' petition." We can only review rulings on matters determined by the trial court, and therefore the questions as to subrogation or other questions not determined by that court are not open for consideration or decision here. For the lack of evidence essential to a reformation of the instrument in question, the judgment must be reversed and the cause remanded for a new trial.