No. 28,159.

THE KANSAS AMUSEMENT COMPANY, *Appellant,* v. THE MARYLAND CASUALTY COMPANY, *Appellee.*

(267 Pac. 968.)

Opinion filed June 9, 1928.

*W. R. Hazen,* of Topeka, for the appellant.

*Leonard S. Ferry* and *Frank E. Miller,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiff brought this action to reform an insurance policy issued by the defendant insuring the plaintiff against burglary and robbery and to recover the loss sustained by plaintiff in a robbery of its messenger. This is the second appeal of the case. In the first appeal there was a review of a decision overruling a demurrer to plaintiff's petition in which the nature of the case and the issues formed were stated and to which reference is made. (*The Kansas Amusement Co. v. The Maryland Casualty Co.,* 122 Kan. 800, 253 Pac. 405.) The policy issued insured against loss for robbery from a custodian outside of the premises, occurring during the hours beginning at 7 a. m. and ending at 7 p. m. of each day. On September 2, 1924, at about 9:30 o'clock p. m., a messenger of the plaintiff carried the receipts of the day from the Novelty theater, and while doing so was held up and robbed of the sum of $472.59. The defendant contested its liability on the ground that the robbery occurred after the hours for which insurance was

agreed upon and written. Plaintiff claimed that a mistake was made in writing the policy in that it was intended to be a coverage for the receipts of the theater for the day, including the evening entertainment. Three performances were given at the theater, a matinée in the afternoon and two night performances, and plaintiff also was operating the Grand theater in another part of the city. The agent of the casualty company was solicited by a representative of the plaintiff named Schober, who was a man experienced in the writing and placing of insurance, and was familiar with the insurance upon the plaintiff's property. Schober told the agent of the defendant that he desired insurance to protect the receipts of the two theaters; that they had a policy which protected the funds while in the safe in the business office, but were wanting some holdup insurance to protect the receipts of the theaters while they were being carried from the box office to the business office, and from the business office to the bank. There was no discussion as to the period of the day for which protection was desired nor any mention made of the time when the funds were to be taken from the theaters to the business office or from the business office to the bank, and the agent of the defendant did not know the times of day or night in which money was transferred from one place to another. The insurance agent thought that a certain standard combination messenger interior robbery policy would furnish the protection which was desired by plaintiff, and prepared it accordingly. He told Schober the price or regular premium for the policy to be $20.25, and the policy was so written and delivered to Schober. A like policy was issued on the Grand theater for inside and outside robbery. As written the policy assured against loss by robbery during the hours mentioned from 7 a. m. to 7 p. m. from a custodian outside of the premises, and also against robbery occurring within the premises between the hours of 7 p. m. and 12 at midnight. The policies were delivered, but were not read by Schober because he thought the agent had comprehended what insurance he desired and had written policies which would afford such protection.

The court found on the evidence that the representative of the insurance company at no time intended to have written for and delivered to the plaintiff policies indemnifying them against loss from robbery for any other or further time than the time set out in the policies which were written and delivered. There was a further finding that there was no mutual intention and agreement between

Schober and the representative of the insurance company to insure the proceeds of the theater against robbery occurring outside the premises at any and all times during the day, and that there was no mutual mistake between them concerning the terms of the insurance policy as to the time of day covered. Accordingly the court denied a reformation of the policy and held that the defendant was not liable for the amount of plaintiff's loss.

There is a point made that the court was not warranted in discharging the jury and taking the case from its consideration, but as the principal relief asked was the reformation of the policy because of mistake or oversight, it is quite clear that it was not a jury case. The case was submitted in this court upon the findings. The plaintiff is not asking that the findings be set aside, but that their true meaning and legal effect be determined, and that this be done in the light of some testimony which is said to be uncontradicted and which is included in the abstract.

It is conceded that the insurance policy as written did not cover the loss sustained by plaintiff. The policy by its terms protected only against robbery occurring during the hours between 7 a. m. and 7 p. m. from a custodian outside of the premises, and also against robbery occurring within the premises between the hours of 7 a. m. and 12 o'clock midnight. The robbery in question occurred about 9:30 p. m. from a messenger who was carrying the receipts of the Novelty theater from the box office of the theater to the office of the plaintiff, to be placed in a burglar-proof safe in that office. Not being entitled to recover under the terms of the policy, plaintiff asks for its reformation claiming that it did not correctly represent the contract actually made, in that there was a mistake in limiting the coverage of a robbery from a custodian outside of the theater during the hours between 7 a. m. and 7 p. m. Plaintiff claims that it was the intention of the insured as well as the insurer that it should cover such a robbery at any hour of the day. If through mistake the policy does not contain the contract actually entered into by the parties, it may be reformed to accord with their intention if such intention is shown by clear and satisfactory proof. But where there is no fraud claimed, as here, the mistake must be one common to both parties. It is not enough to show that there was a misconception or a mistake of one of the parties as to the contents of the policy. To justify a reformation the mistake must

be mutual. The findings of the trial court upon which the case must be determined shows that the agent of the plaintiff may have been mistaken as to the contents of the policy, but they also show that there was no misconception or mistake on the part of the agent of defendant. The policy executed and delivered by defendant's agent accorded with his intention and was the coverage for which payment was made. The circumstances under which the contract was made were found by the court to be that Schober, the agent of the plaintiff, applied to Bailey Brothers for insurance. He had experience in the writing of and placing of insurance on the theaters and properties of plaintiff. He met and talked with the agents of defendant on two occasions and the negotiations respecting the insurance is stated by the court as follows:

"In the first of the two conversations mentioned in finding 7, Mr. Schober told George Bailey that the Crawfords desired insurance to protect the receipts of the two theaters, that they had a policy in force which protected the funds while in the safe in the business office, but that he wanted some holdup insurance to protect the receipts of the two theaters while they were being carried from the box office to the business office and from the business office to the bank. The period of the day during which it was desired protection from robbery was not discussed, nor was the time when the funds were taken from the theaters to the business office or from the business office to the bank referred to, and George Bailey was not informed and did not know the times of day or night that they transferred the said receipts from the box office to the business office or from the business office to the bank.

"The defendant company, at this particular time, was issuing what was called a 'standard combination messenger and interior robbery rider,' which could be attached to and be made a part of a burglary insurance policy.

"From a generality of the description Mr. Schober gave of the protection he desired and from his want of knowledge of the manner and time the funds from the two theaters were transferred and handled, George Bailey thought that the defendant's 'standard combination messenger and interior robbery rider' would furnish the protection against robbery which was desired by plaintiff, and therefore posted himself as to the premiums upon burglary policies covering the theaters with the robbery riders attached, computed for a one- and three-year term and on the day following the first conversation with Mr. Schober, he went again to the Crawford business office and quoted to Mr. Schober, rates on the policy with the robbery rider attached and which George Bailey had in his mind to write for the protection of the Crawfords. Mr. Schober indicated that he wanted a policy for a one-year term, and George Bailey quoted him the price for the same at $20.25, which was the regular premium charged for the policy which was afterwards written by defendant company and delivered to Mr. Schober, and a copy of which is attached to plaintiff's petition. At the same time there was also written and delivered to Mr. Schober a policy covering loss by

burglary occurring in the Grand theater, with the same inside and outside robbery rider attached."

After describing the terms of the policy written and delivered, the court found that—

"While Mr. Schober desired protection from robbery occurring at all times during the day, George Bailey, as representative of Bailey Brothers and the defendant company, at no time intended to have written for and delivered to L. M. and Roy Crawford policies indemnifying them against loss from robbery for any other or further time than the time set out in the policies which were written and delivered."

These findings make it clear that there was no mistake on the part of the defendant as to the terms or contents of the policy. It accorded with the intention of the defendant's agent. He understood that the policy would furnish the coverage which the plaintiff's agent desired and the coverage which he understood had been agreed upon. No additional coverage was discussed by the parties, and defendant's agent was not informed and did not know the times of day or night when plaintiff carried its funds from the box office to the business office, or from there to the bank. It is contended by plaintiff that as the offices of the defendant's agent were only one and a half blocks away from the theaters, he necessarily knew that the receipts of night performances were not intended to be transferred before 7 p. m., but the court's findings expressly negative such knowledge or that both parties intended that protection at night was to be included in the policy. Schober did desire such protection, but he did not discuss the matter of time with the agent of defendant. Schober was not illiterate nor was he ignorant as to insurance contracts, but had had experience in insurance matters. He did not examine the policy delivered to him as ordinary care required, but assuming that his negligence does not estop him nor preclude defendant from obtaining reformation where there was mutual mistake as to the contents of the policy, the remedy is not available where there is no mutuality in the mistake. As to one of the parties the policy conformed with the agreement actually made, while the other thought that a different agreement had been made. As to the coverage for night as well as day the minds of the parties did not meet, and to grant the relief asked by plaintiff would be to make an agreement which the parties had not made. In *Reeder v. Gorsuch*, 55 Kan. 553, 40 Pac. 897, it was decided that:

"In order to establish that a deed absolute on its face is in fact only a mortgage, it must be shown either by direct evidence or by the circumstances of the case that it was the intention and understanding of the grantor and the grantee that it should so operate. It is not enough that one of the parties so considered it; both must concur; otherwise the deed will be treated according to its import unless tainted by fraud or the result of accident or mutual mistake."

In *Waddle v. Bird,* 122 Kan. 716, 253 Pac. 576, it was stated:

"Under the evidence the contract sought to be established is not the one which was in the minds of the parties when the contract was executed. The remedy of reformation may be invoked to ascertain and enforce a contract actually made, but it can never be employed to make a new contract nor to supply terms upon which the minds of the parties never met. As to the measure of proof necessary for the reformation of an instrument on the ground of mutual mistake, it has been determined that it must be clear and convincing. 'It is not enough that it shows a probability of mistake, but there must be a moral certainty of it; in other words, it must be established beyond a reasonable doubt.'" (p. 719.)

See, also, *Kratz v. Padfield,* 111 Kan. 396, 207 Pac. 776; *Algeo v. Employers' Indemnity Corporation,* 119 Kan. 186, 237 Pac. 879.

It follows that the judgment must be affirmed.