464

No. 35,621

THE FEDERAL LAND BANK OF WICHITA, *Appellee,* v. L. H. BAILEY
(also known as LYNN H. BAILEY), and ETHEL M. BAILEY, His
Wife, *Appellees;* A. O. KENDALL and ROSA M. KENDALL, His Wife,
*Appellants;* THE FEDERAL FARM MORTGAGE CORPORATION, *Appellee.*

(134 P. 2d 409)

Opinion filed
March 6, 1943.

*Donald C. Allen,* of Oskaloosa, argued the cause for the appellants.

*Alex Hotchkiss,* of Lyndon, argued the cause for appellees L. H. Bailey and
Ethel M. Bailey.

*Conrad L. Ball,* of Wichita, argued the cause, and *R. G. Hepworth,* of Bur-
lingame, *Robert C. Dow, J. P. Flinn, Edward H. Jamison* and *H. A. Lennartz,*
all of Wichita, were on the briefs for appellee Federal Farm Mortgage Corpo-
ration.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to foreclose a first mortgage
lien on an Osage county farm. The defendants were the mortgagors
and their grantee, and the holder of the second mortgage was im-
pleaded. This appeal is limited to a review of the trial court's judg-
ment that the grantee of the farm had assumed the mortgages in a
contract of exchange therefor.

The material facts were these: Defendants Bailey and wife owned
a farm near Lyndon. The plaintiff bank held a first mortgage on it
to secure $3,000 which they had borrowed in 1933. The defendant
mortgage corporation held a second mortgage executed by the
Baileys about the same time to secure the payment of their promis-
sory note for $2,200.

One Edna Jaggers owned a residential property in Topeka upon
which one Broughton held an option to purchase. Broughton owed

the bank of Osawkie some money, to satisfy which he agreed with A. O. Kendall, a retired officer of the Osawkie bank, that the latter should attempt to dispose of the option. The Topeka property had been listed for sale or exchange with one Mills, a real estate dealer. Mills commenced negotiations with the Baileys to exchange their farm for the Topeka property, and eventually a bargain was effected whereby the Baileys were to acquire the Topeka property and Kendall was to acquire the Bailey farm in Osage county. The Baileys agreed to mortgage the Topeka property to the Osawkie bank for $800 and that money was deposited to Kendall's account. He disbursed that money to pay for abstract of title, to pay Mrs. Jaggers for the Topeka property, to pay the taxes on it, to pay Mills his real estate dealer's commission and to pay Broughton for his option on the Jaggers property.

The Baileys executed a conveyance of their Osage county farm to Kendall, which contained the usual recitals of ownership of the grantors, and that they warranted the farm to be free of encumbrances of every sort—

"Except two mortgages of record to the Federal Land Bank of Wichita and Land Bank Commissioner, respectively, and except the 1938 and 1939 taxes."

The execution of the deeds for the exchange of properties was consummated on September 21, 1940, in the office of one Rodgers, an abstractor of titles in Lyndon, the Baileys, Mills and Kendall being present. Whether Kendall had agreed to assume the mortgages and the legal effect of the want of a specific recital to that effect in the deed were questions sharply contested in the trial court on issues raised by appropriate pleadings.

No defense was offered by any defendant to the cause of action pleaded by the plaintiff bank. With their answer the Baileys filed a cross petition against their codefendant Kendall, in which they pleaded the facts of their exchange of properties with Kendall, and alleged—

"That as a part of the consideration for the transaction, it was orally understood and agreed by and between these defendants and the defendant A. O. Kendall that he assumed the mortgage indebtedness then on the premises, which is the mortgage set up in plaintiff's petition and the cross petition of the defendant, Federal Farm Mortgage Corporation, and taxes for the years 1938 and 1939, then due and owing on the premises."

The Baileys set out a copy of their deed to Kendall which excepted from their warranty against encumbrances the two mortgages

held by the first and second mortgagees, in the language quoted above. The Baileys alleged that at the time of the execution of the deed both parties believed that its language sufficiently expressed the agreement of the parties; that Kendall assured the grantors that it was not necessary nor important to change the deed as drawn; that through the mutual mistake of the grantors and grantee the deed did not recite that Kendall assumed the mortgages and taxes as agreed and intended. The Baileys also alleged that they believed and relied on the statement of Kendall as to the sufficiency of the recital in the deed to state the actual agreement of the parties, and they further alleged that—

"If the acceptance of such deed in such form was not a mistake on the part of said defendant, then defendants allege that it was his intention and disposition thereby to defraud these defendants by inducing and permitting them to execute a deed that did not express and carry into effect the true intent of the said parties."

The Baileys concluded their cross petition with a prayer that their deed of conveyance to Kendall be reformed by adding to the exception clause set out above the additional words "which party of the second part assumes" and that Kendall be held primarily liable on the mortgages sued on by the plaintiff bank and by the defendant mortgage corporation, and that they have judgment over against Kendall for whatever judgment or part thereof they, the Baileys, may be compelled to pay to the mortgage holders as sued on in this action.

The Federal Farm Mortgage Corporation filed an amendment to its answer and cross petition pleading in substance the same allegations of fact against Kendall as those alleged in the Baileys' cross petition against him, and praying judgment against Kendall as well as against the Baileys for the amount due on its second mortgage.

Kendall answered at length, admitting that he entered into an exchange of properties with the Baileys, but denied that he agreed, either orally or in writing, to assume the mortgages on the Osage county farm, and alleged that the deed expressed the full and complete understanding and agreement of the parties. Kendall also denied that the Baileys paid over to him the proceeds of the $800 mortgage executed by them to the Osawkie bank, but that $625 of that amount was disbursed (by whom he did not plead). Defendant Kendall further denied that he made any representation to the Baileys that the exception clause in the warranties of the deed,

relating to the mortgages, had the legal effect of making him assume and agree to pay them. He further denied that there was any mutual mistake in the language of the deed. Kendall closed his answer with a demurrer to Baileys' cross petition on the ground that it did not state a cause of action.

Kendall's answer to the cross petition of the second mortgagee contained a general denial, but in other respects it was consistent with his answer to the Baileys' cross petition.

When the cause was called for trial the Baileys were permitted to amend their cross petition by interlineation thus:

"That these defendants are farmers unfamiliar with the law and without experience in real estate transactions; that the defendant, A. O. Kendall, is a retired banker, has engaged extensively in dealing in and the exchanging of real estate and is familiar therewith and led these defendants to believe they could rely on his knowledge of the law relating thereto and these defendants had confidence in his statements with reference thereto."

Kendall was permitted to interline an amendment to his pleading thus:

"The defendant, A. O. Kendall, for further answer to the amendment of the defendant, L. H. Bailey, to their answer and cross petition, herein filed, denies each, all, every and singular the allegations, statements and averments contained in said amendment, except those hereinafter specifically admitted. The defendant, A. O. Kendall, admits that he is a banker, having been in the banking business in the State Bank of Osawkie for many years."

At the trial before the court, evidence at length was adduced by the parties. Judgment in favor of the plaintiff was rendered as a matter of course; likewise in behalf of the second mortgagee. As between the codefendants, the Baileys and Kendall, the trial court found the issues in favor of the Baileys, and held that the deed from the Baileys to Kendall should be reformed to add to the exception clause relating to the mortgages the words "which party of the second part assumes;" and the trial court further found that defendant Kendall was liable to the Baileys for any and all amounts they may be required to pay on the judgments then rendered in favor of the first and second mortgagees.

The trial court filed a lengthy and instructive memorandum opinion which appears in the abstract but as it was apparently not intended to stand as the trial·court's conclusions of fact and of law as contemplated by the civil code (G. S. 1935, 60-2921) it cannot be regarded as a formal part of the record.

The usual post-trial motions were filed and overruled, and defendant Kendall appeals.

At the outset it may be remarked that the reformation of an instrument of conveyance to conform to the actual agreement of the parties concerned is a long-established judicial practice in this state and elsewhere. In the early case of *Claypoole v. Houston*, 12 Kan. 324, it was held that the district court had jurisdiction to correct and reform an administrator's deed which through mutual mistake did not conform to the intention, agreement and understanding of the parties.

In another case decided fifty years ago, *Stephenson v. Elliott*, 53 Kan. 550, 36 Pac. 980, it was held:

"Where the grantee of a deed enters into an agreement with the grantor that he will assume and pay all of the mortgages and encumbrances on the land conveyed at the time of the execution of the deed, but by the mutual mistake of the parties the deed in its written form does not express this contract, equity has jurisdiction to reform the written instrument so as to conform to the intention, agreement and understanding of the parties." (Syl. ¶ 1.)

Other cases to the same effect were *Butler v. Milner*, 95 Kan. 463, 148 Pac. 605; *Zuspann v. Roy*, 102 Kan. 188, 170 Pac. 387; 53 C. J. 953, 954-955.

The general rule is that the instrument can only be reformed for mutual mistake which must be proved by clear, convincing and satisfactory proof. (*Schaefer v. Mills*, 69 Kan. 25, 76 Pac. 201; *Waddle v. Bird*, 122 Kan. 716, 253 Pac. 576.) There is, however, a qualification of the rule requiring proof of mutuality of the mistake in a case of fraud. Thus, in *Cox v. Beard*, 75 Kan. 369, 89 Pac. 671, it was said:

"The equitable remedy of reformation is not limited to cases of mutual mistakes. Where mistake unmixed with fraud is the basis of the relief sought it must be a mistake common to both parties, but the remedy is available where, by the mistake of one party induced by the fraud of another, there is omitted from a deed land which it was stipulated should be conveyed and which the first party was led to believe was covered by the description written in the instrument." (Syl.)

In *Atkinson v. Darling*, 107 Kan. 229, 191 Pac. 486, which was a suit to reform a written lease on the ground of mutual mistake, the defendant contended that there was no mistake on his part, consequently no mutuality of mistake inhered in the written instrument. In affirming a judgment for the reformation of the instrument this court said:

"Defendant . . . contends that a contract cannot be reformed for the mistake of one party only; that he fully understood the contract; and that there was no mutual mistake. . . . no written instrument which fails to truly recite the bargain of the parties could ever be reformed for mutual mistake if the one who resists its reformation could defeat its correction by his mere self-serving avowal that there was no mistake on his part. . . . furthermore, . . . if he purposely or thoughtlessly kept silent about it, the want of mutuality in the matter of the mistake would not stay the hand of a court of equity to correct the writing, as the attitude of defendant in such case would be treated as a constructive fraud on his part." (pp. 230, 231.)

In *Hickman v. Cave*, 115 Kan. 701, 224 Pac. 57, it was held that—

"A court of equity ·may permit a contract concerning the sale and repurchase of land to be reformed to correct a mutual mistake in its intended terms, or to correct a mistake of one party induced by the fraud of the other, and may enforce the contract as reformed; and the statute of frauds does not prevent the granting of such equitable relief." (Syl. ¶ 3.)

In 53 C. J. 925, 926, it is said:

"The broad ground on which a court will reform an instrument is that it does not accurately set forth the terms of the prior agreement which it was supposed to express. It must appear that the instrument did not represent the agreement of the parties at the time it was executed. . . . but if it fails to embody the actual agreement made, or transaction determined upon by the parties thereto, and the case is made out by proper proof, reformation is the proper remedy. It has been said that relief will be granted without regard to the cause of the failure to express the contract as actually made, whether due to fraud, mistake in the use of the language, or any other thing which prevented the expression of the true intention of the parties."

See, also, *Russell v. Ely*, 133 Kan. 318, 229 Pac. 619.

With the foregoing principles of equity in mind the assignments of error urged by appellant Kendall may readily be disposed of. The first of these is based on the trial court's ruling on appellant's demurrer to the Baileys' cross petition. We think that either on the theory of a mutual mistake in the deed to express the contract of the parties, or on the theory of a mistake on the part of the Baileys and fraud on the part of Kendall, the allegations of the petition were quite sufficient to withstand appellant's demurrer.

The next error urged is on the overruling of appellant's demurrer to the evidence. It would serve no purpose to recapitulate the lengthy testimony on behalf of the Baileys. (*State v. Rose*, 124 Kan. 37, 38, 257 Pac. 731.) The evidence which was both oral and circumstantial was quite sufficient to meet the exacting standard required to warrant the judicial reformation of a written instrument. Moreover, the testimony given by Kendall himself was so evasive

470

that it tended to confirm the Baileys' version of the contract and of the circumstances surrounding the drafting and execution of the deed.

The next error assigned by appellant is based on the rule of law that while a mutual mistake of fact in the making of a contract may be corrected in a proper judicial proceeding, that rule is otherwise as to a mistake of law; and if the recital in the deed excepting from the warranty against encumbrances the two mortgages which covered the property did not impliedly include the assumption of the mortgages by Kendall as grantee, such omission was not a mistake of fact but a mistake of law which bound the Baileys when they signed the deed. But the colloquy in the abstractor's office between the Baileys and Kendall about what was necessary or sufficient to be inserted in the deed to recite the agreement of the parties cannot blink the controlling fact involved in this action—that Kendall did agree to assume the mortgages; and the fact that the Baileys in their ignorance and inexperience were persuaded to sign the deed on Kendall's erroneous or fraudulent assurance that the deed as written sufficiently covered the agreement of the parties cannot avail to upset this judgment.

In 23 R. C. L. 325, where the subject of Reformation of Instruments is treated at length, it is said:

"A study of the adjudged cases justifies the statement that the distinction between errors of law and errors of fact is of much less importance in the reformation of contracts than is commonly supposed; that it has had very little practical effect upon the decisions of the courts. Whether the mistake in question be regarded as one of law or one of fact is not of much consequence; the more important question is whether it is such a mistake as a court of equity will correct, and this perhaps can only, or at least can best, be determined by seeing whether it falls within any of the well recognized classes of cases in which such relief is furnished. As has been stated by a court of high authority, the presumption that every man knows the law—the principle on which are based some of the decisions against reformation for mistake of law—should be permitted to be rebutted by proof and relief granted against a mistake of law."

A fourth error assigned on the overruling of appellant's motion for a new trial is not argued and needs no consideration.

The judgment is affirmed.