No. 36,979

Brewer C. Jones and Juanita Jones, *Appellants*, v. Ernest D. Crowell, Sybil Crowell and Kansas State Bank of Wichita, *Appellees*.

(188 P. 2d 908)

Opinion filed January 24, 1948.

*Roy L. Rogers*, of Wichita, argued the cause, and *Joe T. Rogers*, of Wichita, was with him on the briefs for the appellants.

*Lester Wilkinson,* of Wichita, argued the cause, and *Earl C. Moore* and *Charles F. McClintock,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action wherein the plaintiffs based their right to relief on two causes of action. In the first they sought reformation of a written contract. In the second they asked for an accounting and the recovery of money under an agreement alleged to exist between the parties for the sale of a doughnut business. The case was tried in the court below, as permitted by G. S. 1935, 60-2904, on the first cause of action only, the trial of other issues being continued. This appeal is limited to action of the trial court in sustaining a demurrer to plaintiffs' evidence on the issue submitted.

Plaintiffs' petition with respect to matters important to decision of the question involved, states:

"That on or about the 1st day of June, 1945, the plaintiffs and the defendants, Ernest D. Crowell and Sybil Crowell, entered into a certain oral agreement whereby the defendants agreed to take over the responsibility of maintaining and operating the business known as the Jones Donut Shop under the supervision of the said Brewer C. Jones and further agreed to pay to the said Brewer C. Jones the total net profit from such business per month after deducting from said business income all usual business expenses and in addition to such usual business expenses the sum of seventy-five dollars ($75) per week in lieu of salaries to Ernest D. Crowell and Sybil Crowell; that all of such net profit was to be paid to the plaintiff, Brewer C. Jones, until the sum of fifteen thousand dollars ($15,000) had been received by said Brewer C. Jones, free of tax to him; that it was understood and agreed by and between the parties that upon such $15,000 there shoud be credited all of the said total net profit paid to the said Brewer C. Jones except such portion of said net profit as should be necessary to pay whatever amount the payment of such net profit to the said Brewer C. Jones should increase his income tax over that figure which it would have been without any of such net profit being paid to him;

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"That after the making of the agreement as aforesaid the defendants, Ernest D. Crowell and Sybil Crowell, procured the drafting of a purchase contract, a copy of which is hereto attached and marked Exhibit 'A'; that such contract was drawn by an attorney for the defendants and that through mistake of the parties such contract failed to completely express the agreement of the plaintiffs and defendants hereinbefore alleged; that at the time of the execution of such written contract the plaintiffs relied upon the statements and representations of the defendants, Ernest D. Crowell and Sybil Crowell, that such contract expressed completely the oral agreement hereinbefore alleged and that the

previous oral agreement as to the payment of taxes and the manner in which the sums were to be credited to the $15,000 of net profits was covered correctly by the use of the terms 'net profit' and 'gross income';

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That such contract failed through mutual mistake to express the true agreement of the parties; that the same should be reformed and that if such mistake was not mutual that it was a mistake on the part of these plaintiffs induced by the fraud and inequitable conduct on the part of the defendants, Ernest D. Crowell and Sybil Crowell."

Pertinent provisions of the written contract, referred to in the petition as Exhibit "A," read:

"The sellers (Jones and Jones), the owners of the Jones Doughnut Shop, located at 1118 East Kellogg in the city of Wichita, Kansas, agree to sell said Jones Doughnut Shop to the buyers (Crowell and Crowell) for the total consideration of $15,000.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Said parties of the second part, the buyers, herein agree to pay said parties of the first part, the sum of $15,000 in the following manner to-wit: After the buyers have drawn from said business the sum of $75.00 per week in lieu of salaries then to pay to the sellers the total net profit from said business per month until the total amount of $15,000 has been fully paid.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The buyers agree to assume the responsibility of maintaining the business and the personnel under the supervision of the seller until the terms of this contract are fully complied with."

When analyzed, although differently stated, appellants' claim of error is that their evidence disclosed facts requiring the trial court to reform the written contract either because of mutual mistake of the parties or mistake on their part resulting from fraudulent conduct on the part of the appellees.

There can be no doubt that under our decisions a written instrument may be reformed to conform with the agreement of the parties where the evidence establishes there has been a common mistake in its execution (*Federal Land Bank v. Bailey*, 156 Kan. 464, 468, 134 P. 2d 409, and cases there cited). However, it must be remembered that when mutual mistake is relied upon for reformation the burden is on the asserting parties to affirmatively prove its existence, and show that it was the intention of all parties concerned to make such an instrument as is sought to be established, by clear convincing and satisfactory evidence (*Bodwell v. Heaton*, 40 Kan. 36, 18 Pac. 901; *Schaefer v. Mills*, 69 Kan. 25, 76 Pac. 436; *Kratz v. Padfield*, 111 Kan. 396, 207 Pac. 776; *Algeo v. Employers Indemnity Corporation*, 119 Kan. 186, 237 Pac. 879; *Kansas Amusement Co. v. Mary-*

land Casualty Co., 126 Kan. 354, 267 Pac. 968, and Federal Land Bank v. Bailey, supra).

To the same effect is Waddle v. Bird, 122 Kan. 716, 253 Pac. 576, where it was held:

"The office of the remedy to reform an instrument is not to make a new instrument nor to supply terms upon which the minds of the parties have not met." (Syl. ¶ 1.)

It is likewise well established the equitable remedy of reformation is not limited to cases of mutual mistakes but is available in situations where, by the mistake of one party induced by the fraud or inequitable conduct of another, something is omitted from an agreement which it was stipulated should be included and which the first party was led to believe was covered by its terms. (Cox v. Beard, 75 Kan. 369, 89 Pac. 671; Atkinson v. Darling, 107 Kan. 229, 191 Pac. 486; Hickman v. Cave, 115 Kan. 701, 224 Pac. 57.)

In the application of the foregoing rule it must also be kept in mind the parties asserting mistake on their part and fraudulent or inequitable conduct on the part of others must assume the burden of proof and clearly and definitely establish the existence of that situation by evidence; otherwise they are not entitled to the equitable relief they seek (Russell v. Ely, 133 Kan. 318, 299 Pac. 619; Federal Land Bank v. Bailey, supra; Hough v. Munford, 160 Kan. 572, 164 P. 2d 92).

So far as it pertains to general principles of law applicable to the decision of reformation cases appellants' argument in support of their chief claim of error is sound and well grounded. Their difficulty comes not from their construction of the general law but from the potency they give the evidence on which they rely as sufficient to require its application.

In the court below the only evidence adduced to sustain the cause of action with which we are concerned came from the lips of appellant Brewer C. Jones, who, we note from the petition, was the owner of the business involved under the contract, and from Juanita Jones his wife. No useful purpose would be served in an extended recital of their testimony.

The testimony of Brewer C. Jones on matters material to reformation can be summarized as follows: Sometime prior to July 1, 1945, the witness agreed to sell appellees, Sybil Crowell, his niece, and Ernest D. Crowell, her husband, his doughnut business for $15,000. Appellees were to take over the business on July 1, pay

all expenses of operating out of the profits of the business including an agreed allowance for their own services, and all income taxes becoming due and payable as a result of its operation. All net profits remaining were to be paid to the witness until he had received, as the purchase price, the net sum of $15,000. The witness was to supervise operation of the business until payment of the sale price was completed but the purchasers were to assume responsibility for its maintenance. The Crowells worked at the doughnut plant for about a month as employees. On July 1, 1945, pursuant to the agreement which, up to that time was entirely oral, they took over. Sometime in July Mr. Crowell approached the witness and said he thought they should have a contract on the place because if anything happened to witness the Crowells would be left in bad shape. Witness replied that it made no difference to him and, quoting from the record stated "that he figured on sticking to what he said he would do; that he told him that the contract would have to be in there that Crowell would be running the place under his supervision and that he had the right to see that it was run that way; and that it was to be in the contract that he was paying income tax in the low bracket on account of this was to be paid in the high bracket until it was paid off; that the place was to net him fifteen thousand dollars, since he was to give Mr. Crowell fifty dollars a week and Sybil twenty-five; that Mr. Crowell said that was all right; that was just the way he had figured it out."

On or about the seventh or eighth of July the Crowells brought the contract to the Jones home. Mr. Crowell stated he wanted Mr. Jones to read it. The parties went into the house where Mrs. Jones was present and some conversation ensued regarding it. Mr. Jones read the contract. After reading it he said, "That contract is not like we agreed on, the income tax was supposed to be in there." Mr. Crowell replied that Mr. Wilkinson (an attorney) got up the contract and that so far as the income tax was concerned he suggested they should have a verbal agreement between them regarding it. Jones then handed the contract to his wife and she read it. Thereafter Ernest Crowell said, referring to the contract, "I will take it back and have it changed." The witness then stated that he gave the matter some thought and agreed to sign the contract in the form in which it was presented; that it was agreed between the four of them that they would pay the income tax and net him fifteen thousand dollars; and that they then all signed the agreement.

The foregoing relates to Mr. Jones' testimony on direct examination. On cross-examination the record discloses his testimony to be as follows:

"That the contract was presented to him at his home at 3720 South Broadway; that he knew at the time he signed it that there was nothing in the contract relative to income tax; that that was a verbal agreement they had."

Mrs. Jones testified in substance as follows: That when the contract was brought to the house by Crowell and signed by the parties she heard Mr. Jones and Mr. Crowell discuss it; that Mr. Jones inquired why the income tax was not included in the contract; that Mr. Crowell replied Mr. Wilkinson advised him it would not need to be in there; that Mr. Crowell then said they should leave it as a verbal agreement between the four of them; that they then signed the contract with the assurance and understanding the income tax would be paid by the Crowells and that they would live up to their agreement with respect to it.

In the face of evidence such as has been heretofore related it cannot be said there was mutual mistake in the execution of the involved contract. Neither can it be held that there was a mistake on the part of the appellants and inequitable or fraudulent conduct on the part of the appellees. In fact, instead of establishing either ground relied on for reformation by the degree of proof required under our decisions, it appears the record definitely establishes there was neither mutual mistake on the part of appellants nor inequitable or fraudulent conduct by appellees on the date of the execution of the agreement appellants now seek to have reformed. Appellants read the contract. They knew what it contained and, after having been advised that it would be revised to include a provision with respect to income taxes, elected to sign it in the form in which it was presented relying, as Mr. Jones himself stated, on a verbal agreement with respect to the payment of income taxes. In that situation, since it contains everything the parties intended its provisions should include on the date of its execution, there is nothing about the contract to reform.

In reaching our conclusion we recognize the helpful assistance of appellants' counsel in briefing many decisions, from both this and foreign jurisdictions, dealing with factual situations justifying the reformation of written instruments. All but one of them can be disposed of with the statement that appellants' evidence failed to reveal the factual situations disclosed in those decisions. One case,

*Youmans v. Kansas Tel. Co.*, 132 Kan. 360, 295 Pac. 697, on which counsel places much weight, is entitled to special consideration. Conceding a casual examination of its opinion might give rise to the impression that it involved facts similar to the case at bar, we believe a careful analysis does not justify that conclusion. The case can be further distinguished on the basis the plaintiff did not seek reformation of but recovery on the contract itself, while the question in issue was the propriety of the ruling of the trial court on admission of testimony, not whether—as here—in an action limited strictly to reformation the plaintiffs' evidence under all the facts and circumstances was sufficiently clear, satisfactory and convincing to permit the granting of such relief. Other errors specified by appellants relate to refusal of the trial court to consider evidence offered by them relating to payment of income taxes by the respective parties. Our decision makes it obvious that, so far as the issue submitted is concerned, error cannot be successfully predicated upon the rejection of such evidence.

The judgment sustaining the demurrer to appellants' evidence is affirmed.