John L. BROWN, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.

No. 90–1005–C.

United States District Court, D. Kansas.

May 9, 1991.

---

Norman G. Manley, Davis & Manley, El Dorado, Kan., for plaintiff.

Ronald M. Gott, Klenda, Mitchell, Austerman & Zuercher, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is a declaratory judgment action filed by John L. Brown to determine coverage under a policy of disability insurance issued by the Equitable Life Assurance Society of the United States (Equitable). The sole issue presented by this case is whether Brown, the insured, may recover under a disability insurance policy issued by Equitable notwithstanding the fact that Brown has already received benefits under another disability insurance policy issued by another insurer. The policy issued by Equitable did not contain an express prohibition against the purchase of other disability insurance. Equitable seeks reformation of the policy based on mutual mistake.

This case comes before the court upon Brown's motion for summary judgment and upon the cross-motion for summary judgment. The parties agree that no is-

sues of fact remain and stipulate the law governing the issues of this case are the laws of Kansas.

### Standard for Summary Judgment

Summary judgment is appropriate when the movant can demonstrate that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Fed.R.Civ.P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is appropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

### Facts

The facts are undisputed. All of the facts are taken from the affidavit of John L. Brown and from the disability insurance policy issued by Equitable.

At the time of the accident giving rise to disability, Brown was a licensed dentist who practiced in both Sedan and Howard, Kansas. Brown was 36 years old and had practiced dentistry for approximately 10 years. Brown's annual income from dentistry was approximately $68,000.

Since 1979, Brown had maintained most of his personal lines of insurance with Northwestern Mutual Life Insurance Company (NML) including three disability policies which would provide combined monthly benefits of $2,650. In 1987, Brown ran into his former high school mathematics teacher, Jay Keener at a city fair in Andover, Kansas, who was then working as an insurance agent for Equitable. At the time, Brown mentioned that he was not totally satisfied with his existing NML retirement plan and mentioned his dissatisfaction to Keener. A few days later, Keener called on Brown and discussed changing his insurance from NML to Equitable. On that day, Keener wrote a new retirement plan for Brown. Shortly thereafter, Keener also sold Brown an Equitable health insurance plan and as time went on, most coverage, including Brown's life insurance, the life insurance on Brown's son, and the life insurance on Brown's employees was similarly transferred to Equitable.

The final change was in connection with Brown's disability insurance. This change was initiated by an application prepared by the agent and signed by Brown on June 23, 1987. At the time the application was filled out, the agent, Keener, was provided with and examined the existing NML policies. Brown applied for disability income insurance coverage in the amount of $4,500. There was no specific discussion as to what would become of the NML policies except to the effect that Brown's intention at that time was to permit the policies to expire by nonrenewal. At no time did Keener suggest that the termination of the NML policies was a condition precedent to Equitable's coverage. In fact, Keener mentioned that Brown might wish to secure additional coverage through the State Dental Association if Brown felt the limits offered by Equitable were inadequate.

Although the application was filled out on June 23, 1987, the Equitable policy which would afford $3,100 in disability coverage was not issued until October 16, 1987.[1] In the meantime, the premiums on

---

1. The effective date of the Equitable disability insurance policy was August 25, 1987, although the policy was "issued" to Brown on October 16, 1987. However, until the policy was issued to

the three NML disability policies were coming due. One policy came up for renewal in September. It was not renewed. In October, Brown received word from NML that another policy was up for renewal and that his premium due in the month before was delinquent. The third policy would not be due until December. Brown became concerned over the failure of Equitable to issue its own policy and contacted his agent for advice. After confirming with his superiors that the Equitable policy had not, in fact, been issued, Keener called Brown and advised him to pay these NML premiums since there was no guarantee that the Equitable policy would, in fact, be issued. Based upon this advice, Brown renewed both the delinquent and the then due NML disability policies with checks written on October 6, 1987 and October 14, 1987. The Equitable policy was issued two days later and was delivered to Brown shortly thereafter.

On December 14, 1987, Brown hurt his back while playing with his son. The incident was diagnosed as a soft tissue injury and treated conservatively by his osteopath. Brown was off work for approximately one week. Brown periodically received treatment thereafter until March 17, 1988, on which date Brown was involved in an automobile accident. As a result of this accident, Brown sustained a herniated disk and became disabled. Equitable has reserved its right to contest the extent of Brown's disability, but the court notes that Equitable has waived the payment of Brown's life insurance premiums since the date of the automobile accident under a disability waiver of premium rider to the life insurance policy containing a definition of total disability which is essentially identical to the definition of total disability under the disability policy. In any event, the resolution of Brown's current physical condition is not necessary for the resolution of the precise issue raised in this motion.

Subsequent to surgery, Brown made claim under the Equitable policy. By this date, all but one of the NML policies had lapsed. Unknown to Brown, one NML policy remained in effect due to an error made by his bookkeeper who inadvertently paid an NML disability premium on April 4, 1988, instead of an NML office overhead expense premium. Brown was at home recuperating from his March 25th surgery at the time this premium was paid. The bookkeeper paid the premium utilizing one of several checks which Brown had previously signed and left with her to pay office expenses.

Equitable took Brown's claim under advisement. Without a definitive response from Equitable, Brown contacted NML to determine if his lapsed policies could be salvaged. In a remarkable demonstration of good faith, NML creatively applied an accumulated dividend under one NML policy and considered the December, 1987, back injury as arguably a sufficient temporary disability to trigger its own waiver of premium provision and finally granted Brown the maximum possible grace period with the resulting effect that all three NML policies were reinstated. Brown currently receives $2,650 under these policies.

In light of NML's reinstatement, Equitable denied coverage under its own policy taking the position that Brown misrepresented his intentions as to the NML disability policies at the time he applied for coverage with Equitable. NML has declined to take issue with the additional coverage afforded by Equitable even though the NML disability insurance application contains similar inquiries concerning other disability coverage.

### Law

In this case, Equitable seeks reformation of the insurance contract. In this motion, Equitable does not contend that Brown has made misrepresentations or that this case involves bad faith. Equitable seeks reformation on the basis of (1) mutual mistake; and (2) the public policy against over-insurance. Equitable indicates that this case "is simply an equitable endeavor to have the

Brown, he was apparently unaware that he was covered by the Equitable disability insurance policy.

court reform the insurance policy to reflect the true intent of the parties thereto, i.e. that plaintiff have monthly disability benefits of $3,100, as adjusted by cost of living increments." Equitable indicates that it is willing to supplement the three NML policies by $450 per month, including a cost of living adjustment, or in the alternative, pay the full monthly benefits of $3,100 per month, with adjustments, if Brown will cancel the three NML policies.

■ An insurance policy is a contract. *Chance v. The Farm Bureau Mut. Ins. Co., Inc.*, 756 F.Supp. 1440, 1442 (D.Kan. 1991). An insurance contract is generally liberally construed against the insurer. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 36, 744 P.2d 840 (1987). *See Carriers Ins. Co. v. American Home Assur. Co.*, 512 F.2d 360, 362 (10th Cir.1975).

> The purpose of the "construed against the insurer" rule, however, "is not to predetermine disputes but only to assist the court in determining the intent of the parties to the contract." *Liberty Mutual Ins. Co. v. Allied Mutual Ins. Co.*, 442 F.2d 1151 (10th Cir.1971). The basis for construing an insurance policy against the insurer in close cases is simply the rule of contracts that the drafter must suffer the consequences of not making the terms clear. (citations omitted).

*Lightner*, 242 Kan. at 36, 744 P.2d 840. However, plain and unambiguous policies must be given their plain meaning. *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15 (1984).

■ "Reformation is an ancient remedy used to reframe a written contract to reflect accurately the real agreement between the contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing does not embody the contract as actually made." *Mutual of Omaha Ins. Co. v. Russell*, 402 F.2d 339, 344 (10th Cir.1968), *cert. denied*, 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 753 (1969); *see also Andres v. Claassen*, 238 Kan. 732, 740, 714 P.2d 963 (1986). Parol evidence is admissible to show that the purported agreement is not the true one, by reason of the parties' mutual mistake. *Rosenbaum v. Texas Energies, Inc.*, 241 Kan. 295, 298, 736 P.2d 888 (1987). Without fraud, mistake by one party is not enough to warrant reformation. *Palmer v. Land & Power Co.*, 180 Kan. 492, 306 P.2d 152 (1957). The party seeking to reform an instrument has the burden of proving the mutuality of the mistake. *Rosenbaum*, 241 Kan. at 301, 736 P.2d 888. The party seeking reformation must show by clear and convincing evidence that it was the intention of all of the parties concerned to make an instrument as is sought to be established. *Jones v. Crowell*, 164 Kan. 261, 264–65, 188 P.2d 908 (1948). See Jerry II, *Understanding Insurance Law* § 25H at 126 (1987).

"An *agreement* must have been reached; a court will not reform an insurance contract to 'conform to the parties' negotiations or haphazardly expressed intentions.'" *Evans v. Hartford Life Ins. Co.*, 704 F.2d 1177, 1179 (10th Cir.1983) (quoting *Industrial Indem. Co. v. Aetna Casualty & Surety Co.*, 465 F.2d 934, 938 (9th Cir. 1972)). "Even in situations where obvious mistakes have been made, courts will not rewrite the contract ... but will only enforce the legal obligations of the parties according to their original agreement." *Mutual of Omaha*, 402 F.2d at 344. In short, reformation is not to be used "to make a new instrument nor to supply terms upon which the minds of the parties have not met." *Jones*, 164 Kan. at 264, 188 P.2d 908 (quoting *Waddle v. Bird*, 122 Kan. 716, Syl. ¶ 1, 253 P. 576 (1927)).

■ Like all contracts, insurance policies may be reformed to express the correct intent of the parties. *Rider v. State Farm Mut. Automobile Ins. Co.*, 514 F.2d 780, 783 (10th Cir.1975) (applying Kansas law); *Monarch Ins. Co. of Ohio v. Lankard*, 715 F.Supp. 304, 306 (D.Kan.1989) (applying Kansas law); *Stamps v. Consolidated Underwriters*, 205 Kan. 187, 200, 468 P.2d 84 (1970).

In this case, Equitable seeks to add a clause which was not included in the terms of the original contract. Section 7 of the

policy, paragraph 7.1 titled "Entire Contract; Changes" provides:

> This policy, the application and any attached endorsements or amendments constitute the entire contract. No change in this policy shall be valid unless approved by an officer of the Company and such approval is endorsed on or attached to this policy. No agent has authority to change this policy or to waive any of its provisions.

As noted above, because Equitable drafted the contract, all ambiguities are drawn in favor of Brown.

Equitable apparently could find no case directly on point in support of its request for reformation. Instead, Equitable relies on general statements of law. Generally, cases involving issues similar to the case at bar turn on the validity of a clause expressly included in the insurance contract which prohibited the insured from acquiring additional insurance. In most of those cases, the *insured* sought to challenge the enforceability of such a provision. The court could not, in its independent research of the issue, find a case in which the court, through reformation based on mutual mistake, reformed an insurance contract to include a clause preventing the insured from acquiring additional insurance.[2]

■ The most persuasive reason for denying Equitable's request for reformation is the fact that there is no evidence of mutual mistake. While it may be argued that a unilateral mistake was made, there is no evidence that Brown considered the limitation Equitable now urges to insert into the contract as a condition of the contract. Equitable does not contest Brown's assertion that this limitation was never discussed at the time the contract was made, does not appear in the contract, and was not asserted as a defense by Equitable until Brown attempted to recover under the disability policy. The court is wholly unpersuaded that Brown intended to include such a limitation in the insurance policy;

the fact that Brown thought that he would let the NML policies lapse is immaterial and was not a basis of the contract. Thus there was no meeting of the minds on this limitation and no mutual mistake.

■ Moreover, Equitable was aware that Brown had maintained his disability insurance policies with NML (at Equitable's agent's suggestion) at the time it issued its policy. Equitable's agent even suggested that Brown might desire to acquire additional coverage. Equitable is effectively estopped from asserting this defense and seeking reformation. *See generally 9 Couch on Insurance* § 37B:40 (2d ed.1990).

In sum, there is no evidence of mutual mistake and no basis upon which the court could reform the insurance contract. The equities in this case run to the insured who has paid the premiums for disability insurance. Brown did not consider the cancelation of his other disability policies as a basis of his contract with Equitable.

■ As to the issue of over-insurance, there is a general public policy against over-insurance. *See generally 9 Couch on Insurance* § 37B:1. The policy against over-insurance is based on the premise that by preventing individuals from acquiring insurance far in excess of the value of the property insured, the incentive to commit arson (or otherwise to injure or destroy the insured property through gross carelessness) is removed.

■ Contrary to Equitable's assertion, this case is not a clear example of over-insurance. Brown estimated that his income as a dentist was $68,000 annually. The court has calculated the combined amount that Brown will receive under the NML and Equitable policies. That amount, excluding cost of living adjustments, is $69,000 annually. This calculation demonstrates that the amount of "overinsurance" is only $1,000 a year. The court is not convinced that this amount of "extra" disability insurance is against public policy. First, the

---

**2.** The court notes that in its research of this issue, it located cases over a hundred years old in which insurance companies had included express limitations on the insured's right to pur-

chase other insurance. *See, e.g. Cobb v. The Insurance Co. of North America,* 11 Kan. 93 (1873).

amount of insurance is, as a practical matter, very close to Brown's estimated income. Brown is a dentist and his estimated income of $68,000 a year is simply that: an estimate. Moreover, Brown's estimate did not include adjustments for inflation. In any event, under the facts of this case the court will not rely on a $1,000 differential to deprive the insured of the disability benefits for which he has paid.

The court concludes that Brown is entitled to attorney's fees under K.S.A. 40–256.[3] *See Smith v. Blackwell,* 14 Kan. App.2d 158, 791 P.2d 1343 (1989) ("Whether an insurer's refusal to pay an insured's loss is without just cause or excuse and requires allowance of attorney fees is determined by the facts and circumstances in each case.")

In accordance with the practice of this district, the parties shall negotiate in good faith to reach an agreement with regard to the fee award. In reaching this agreement, the plaintiff shall make available to the defendants any time slips, records, or other documents that support his claim for attorney's fees. If the parties reach an agreement, they shall file an agreed upon order setting forth the terms of their agreement. If the parties are unable to reach an agreement with regard to the fee award, within 60 days of the issuance of this order, the plaintiff shall file a statement of consultation and motion as contemplated by D.Kan. Rule 220.

IT IS THEREFORE ORDERED that Brown's motion for summary judgment (Dk. 10) is granted for back due disability payments plus interest, for future disability payments as long as Brown remains totally disabled and attorney's fees.

IT IS FURTHER ORDERED that Equitable's cross-motion for summary judgment (Dk. 16) is denied.