No. 37,445

EARL M. CLARKSON, *Appellee*, v. FRIGIDMIST, INC., a corporation, and WILLIAM G. STARTZ, *Appellants*.

(212 P. 2d 214)

Opinion filed December 10, 1949.

*W. H. Schwinn,* of Wellington, and *Payne H. Ratner, Charles F. McClintock, Richard B. Clausing* and *Louise Mattox,* all of Wichita, were on the briefs for the appellants.

*Bert E. Church,* of Wellington, and *W. L. Cunningham, D. Arthur Walker, William E. Cunningham* and *William R. Howard,* all of Arkansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action to reform a contract for money and to declare a lien. Defendants' demurrer to the petition was overruled. They have appealed.

The petition alleged that plaintiff and defendant Startz formed a partnership in 1941 and by June 1, 1945, it had become prosperous; that plaintiff entered the navy February 7, 1945, and the partners discussed the matter of dissolving the partnership; that the partnership had paid the income taxes of each partner from the partnership income for 1943 and 1944; that on June 1, 1945, plaintiff was the sole owner of a lumber company and the partners understood that the taxes on the income from it would be paid by him; that on June 1, 1945, plaintiff owed $1,500 income taxes on the income from the lumber company and the partnership income taxes there estimated to be $120,000, as well as an amount to be determined through negotiation; that an appraisal of the partnership property

showed it to be worth $128,000 after deducting $120,000 for income taxes; that defendant Startz orally proposed that he out of the partnership funds would pay all liabilities of the company, including income taxes owed by the company, and plaintiff should pay the income taxes on his income from the lumber business and Startz would pay plaintiff $50,000 and plaintiff would turn over to Startz all the assets of the company and plaintiff was to have a lien upon all the firm's property until the income taxes were paid; that plaintiff accepted the proposition relying on Startz to pay the taxes from the partnership funds; that the partners executed Exhibit "A," which was attached, and plaintiff transferred his interest in the partnership property. The paragraph of Exhibit "A" with which we are interested reads as follows:

"As a further consideration for said conveyance and transfer of the assets to him, the said Startz agrees to assume and pay out all outstanding bills, obligations, and liabilities contingent or otherwise against the partnership and to hold Earl M. Clarkson Jr., harmless from any claim of any kind which might be asserted hereafter as the result of any liability or claim asserted against said partnership, provided, however, that income taxes owed or owing by Earl M. Clarkson, Jr., shall be paid by him individually and shall not be treated as obligations of the partnership."

The petition then alleged that it was the true understanding of plaintiff and Startz that Startz would pay the income taxes of the plaintiff of about $60,000 and for that purpose plaintiff delivered to Startz all the assets of the firm. The petition contained the following:

"16. That through mutual mistake of law and fact, said plaintiff and defendant Startz did not know and understand that technically the income taxes of each partner was an individual obligation to the Government, and said agreement should be reformed to speak the truth and set forth the true and correct intention, understanding and agreement between Clarkson and Startz, and provide that Startz was to assume and pay all outstanding bills, obligations and liabilities, contingent or otherwise, against the partnership out of said partnership funds, assets and property, including the income taxes due or to become due to the Federal Government from each of said partners for income each had received out of or by reason of said partnership or renegotiation, and that Earl M. Clarkson, Jr., should pay any income taxes owed by him for income from his lumber business and the $5,000.00 paid as salary."

The petition further alleged that such reformation would be in harmony with the interpretation placed upon the contract by the parties; that plaintiff went overseas and defendant took over the property subject to the lien of plaintiff until the income taxes were

paid; that defendant Startz merely changed the name of the company and though the company was incorporated as Frigidmist, Inc., the assets of the former partnership were at the time suit was filed the assets of the corporation and any transfer of them to Frigidmist, Inc., was in violation of G. S. 1935, 58-101 to 58-104, and Frigidmist, Inc., was wholly owned by defendant Startz. The petition then contained an allegation as follows:

"21. The defendant, Startz, in fact at all times has owned and now owns all the stock of the Frigidmist, Inc., and, since the inception of said Company, has directed all the policies and been president and in charge of the general management of the Frigidmist, Inc., and has treated the Corporation as his property and dominated and controlled it and its affairs and was the sole directing spirit of the Corporation. He was and is in fact and in reality, for all practical purposes, the Corporation, and the Corporation was and is one and the same as Startz, defendant."

The petition then alleged that when plaintiff returned from service he received word that a tax lien was to be filed on his property for nonpayment of income taxes in the amount of $60,000 which Startz had agreed to pay; that thereupon he employed a lawyer to file suit against Startz; that thereupon defendants agreed in writing that they would pay the taxes in question at the rate of $5,000 per month, starting May 15, 1944, with two payments of $500 each on March 15 and April 15; that thereafter on about March 31, 1947, the government filed a lien for the taxes in question against plaintiff in the amount of $50,456.63; that pursuant to the agreement Frigidmist, Inc., made four $5,000 payments to the collector of internal revenue on April 14, May 16, June 16, July 15, all in 1947, and ordered that $2,000 of each of these payments be applied upon the income taxes assessed against plaintiff; and no additional have been made by either party; that about June 20, 1947, the government notified the plaintiff of additional deficiencies for 1944 in the amount of $2,443.22 and the grand total claimed from plaintiff was $54,134.01; that defendants had appropriated to their own use the assets of the partnership and plaintiff had a lien on those assets to the extent of the unpaid taxes and he had a right to a lien on those assests to the extent of the income taxes; that such assets were in danger of being lost unless a receiver was appointed to take charge of them and the assets of the partnership now in possession of defendants were held by the defendants as security for the payment of the taxes and defendants held them in trust for such payments; that by reason of the facts pleaded plaintiff was entitled to have the written contract between

the parties reformed so as to conform to the contract originally made and to have the agreement of the defendants to pay the amount of the income taxes—$500 on March 15, 1947; $500 on April 15, 1947; $5,000 May 15, 1947, and $5,000 on the 15th of each month until the amount of the taxes was paid specifically enforced and establishing plaintiff's lien on the funds of the old partnership for the amount of the unpaid taxes and for the appointment of a receiver to take possession of the assets of the old partnership or in the alternative for judgment against the defendants for damages in the sum of $54,-134.01, with interest from October 3, 1947. The prayer was for a judgment as above stated.

Exhibit "B," which was referred to in the petition, was as follows:

"FRIGIDMIST, INC.
"Wellington, Kansas
"March 3, 1947

"Foulston, Siefken, Schoeppel, Bartlett
   & Powers, Attorneys at Law
"Fourth National Bank Bldg.
"Wichita, Kansas.

"Re: Clarkson-Startz Income
        Tax Matter
"Attn. Mr. Siefken
"Dear George:

"In reference to the conversations over the telephone I have had with you and which you have had with Mr. Startz in regard to the above matter we advise you that this company feels its obligation to take care of the income tax that was asessed against Mr. Clarkson for income tax becoming due on or prior to June 1, 1945, the date of the dissolution. We know that Mr. Clarkson has received notice from the Collector of Internal Revenue that a little over $50,000.00 is due. This company has just undergone a slack season in its business during the winter months and has also made some commitments for the purchase of materials so that the company is unable to pay the amount in full but authorizes you to try to arrange with the collector's office that the amount be paid in installments as follows:

"$500 March 15, 1947
"$500 April 15, 1947
"$500 May 15, 1947

and $5000 on the 15th of each and every month thereafter until the amount is paid in full with interest. The company would, of course, pay off the amount in larger sums if their income justifies it but will make arrangements to pay these amounts definitely.

"This is with the understanding that Mr. Clarkson will report to this company any refunds that he gets on his income tax returns prior to June 1, 1945, either state or federal, in order that the amount of any such refunds be turned over to this company so that this company can apply these refunds on the tax that is still unpaid. Mr. Startz himself received a refund on his

state income tax for time prior to June 1, 1945, and expects to receive another. He is informed that Mr. Clarkson received approximately $250.00 and will receive another refund from the state.

"Mr. Clarkson's company, the Sportsman Trailer Company, is also· indebted to the Frigidmist Company on open account in the sum of $1,114.59 and this company will, of course, expect that item to be taken care of in the adjustment of this matter. I realize that the federal government will make no concessions or be interested in any indebtedness between the Frigidmist Company and anyone else but I feel between Mr. Startz and Mr. Clarkson those adjustments can and should be made.

> "Yours very truly,
> "FRIGIDMIST, INC.
> "/s/ R. H. STEWART
> "R. H. Stewart

"RHS/di."                      "Secretary & Treasurer

The defendants demurred to this petition on the ground that several causes of action were improperly joined and that the amended petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled and defendants have appealed.

The first argument of defendants is that the petition was demurrable because it did not state facts sufficient to constitute a cause of action for the reason that the mutual mistake pleaded was one of law and not one of law and fact. The defendants cite many authorities wherein it has been held that in order for equity to reform a contract on account of a mutual mistake the mistake must be one of fact and not of law and if the error consists in erroneously supposing that the words of the instrument, with which the parties had made themselves acquainted, were legally effective to secure the desired result the mistake was one of law. In this connection they argue that the contract in question provided that the defendant Startz would pay the claims asserted against the partnership and that plaintiff pleaded in his petition that both parties thought this included income taxes when as a matter of law income taxes were a liability of the individual and not of the partnership. Plaintiff in response to this cites amongst other cases *Federal Land Bank v. Bailey,* 156 Kan. 464, 134 P. 2d 409, where we quoted with approval the rule set down in 23 R. C. L. 325, to the effect that whether the mistake be regarded one of law or of fact is not of so much consequence and the real question is whether it is a mistake which a court of equity will correct.

We find it not necessary, however, to decide that interesting question. It is pleaded in the petition that whatever the words of

the written contract the parties, after the plaintiff returned from service and discovered that the income taxes had not been paid, interpreted the contract to mean that the defendants were bound to pay the taxes in question and not only made arrangements to pay them but actually made some payments upon the amount due, in conformance with this operative interpretation. We discussed such a situation in *Kirkpatrick v. Chrysler Sales Corp.*, 127 Kan. 724, 275 Pac. 155. There we cited many cases in which we held the operative interpretation of a contract should be given controlling significance. In that case we stated:

"And so here. That the rights and liabilities of those litigants were not altogether and exclusively defined by the literal terms of the contract July 1, 1925, and ending June 30, 1926, was clearly revealed by the constant and unequivocal recognition of the continuity of the business relationship existing between plaintiff and the Maxwell, Chalmers and Chrysler companies from 1918 to 1926 regardless of successive changes in their corporate control."

It would be difficult to state a case where the rule would be more clearly applicable than here. Defendants are bound by the operative interpretation pleaded and the petition was not demurrable on the ground it did not state a good cause of action.

Defendants next argue that the petition was demurrable because several causes of action were improperly joined. The argument is that the petition asked for a reformation of the contract and also for the creation of a lien. Defendants argue that if we hold that the contract should not be reformed, then there is no lien to be enforced. The answer to that argument is that while we do not hold the contract should be reformed we hold that the operative interpretation of the contract is such that the petition states a good cause of action against the defendants for the recovery of money and for the payment of taxes regardless of whether or not the contract is reformed. Since we so hold in view of the fact that the petition alleges that the assets upon which the lien is asked are actually assets of the old partnership and that actually the change to Frigidmist, Inc., was in name only, a mere matter of form, the petition states a good cause of action for the lien also—hence there is no misjoinder of causes of action. It is well settled that it is proper in an action for specific performance to plead in the alternative and ask for damages for nonperformance. See *Nelson v. Schippel*, 143 Kan. 546, 56 P. 2d 469; *Owen v. Christopher*, 144 Kan. 765, 62 P. 2d 860; and *Stramel v. Hawes*, 97 Kan. 120, 154 Pac. 232.

The judgment of the trial court is affirmed.